WEST VIRGINIA NORTHERN R. CO. et al. v. UNITED STATES ex rel. KINGWOOD COAL CO.

(Circuit Court of Appeals, Fourth Circuit. November 15, 1904.)

No. 541.

1. FEDERAL COURTS—TRIAL—WAIVER OF JURY—REVIEW.

Where an order of the court setting an application for a peremptory writ of mandamus for hearing disclosed an admission by counsel that "by consent of parties" a jury was waived and the cause submitted to the court for determination, but the record did not disclose any "stipulation in writing waiving a jury," as prescribed by statute, the only questions of law reviewable on error were the sufficiency of the alternative writ or of the findings to support the judgment.

2. SAME—TRIAL COURT—DETERMINATION OF FACTS—CONCLUSIVENESS.

On a trial by the court the court's determination of the facts is binding on error if there is any evidence to sustain it.

3. SAME—SPECIAL ISSUES OF FACT—FINDINGS.

On an application for a peremptory writ of mandamus tried to the court, the court could not be required to make findings on special issues of fact.

4. SAME—CARRIERS—DISCRIMINATION—ALTERNATIVE WRIT—AMENDMENT.

Where an alternative mandamus against a carrier commanded it to furnish relator, for the transportation of its coal, without discrimination, at least 33⅓ per cent. of the total car supply to be distributed by the carrier at the time the writ was served, or to show cause to the contrary, the court's power to issue the writ being statutory, was not within the strict rule of the common law with respect to amendments, so that, on the court's announcing its conclusion that relator was only entitled to 31 per cent. of the car supply, the court was authorized to permit relator to amend the alternative writ to conform to the facts as found.

5. SAME—PARTIES.

Where, on an application for mandamus against a carrier to prevent discrimination in the furnishing of cars to relator and two certain other coal companies, the petition alleged and the return admitted that the president of the railroad company was himself one of, and also largely interested in another of, the coal companies other than relator, and was, in effect, in control of the railroad company, and that what was done by such company was done through the president, he was a proper party to the proceedings.

6. SAME—SEVERAL JUDGMENT.

Where a mandamus proceeding was brought against a carrier and its president to prohibit discrimination, and, though the mandate was addressed to the railroad company and to its president, "and each of them according to their several and respective powers," the judgment for costs went against the carrier alone, such judgment was not joint, but should be taken distributively, as affecting the president only according to his powers.

**7. SAME—MANDAMUS AGAINST OFFICERS.**

The grant of power to federal courts to issue mandamus against a common carrier corporation to prevent discrimination necessarily embraced power to act on the officers of such corporation in control thereof, independent of Act Cong. Feb. 19, 1903, c. 708, § 2, 32 Stat. 848 [U. S. Comp. St. Supp. 1903, p. 363], providing that in any proceeding to enforce the statutes relating to interstate commerce it should be lawful to include as parties, in addition to the carrier, all persons interested in or affected by the practice under consideration, etc.

**8. SAME—DISCRIMINATION OF SERVICE—EXTENT OF SERVICE—POWER TO FIX.**

Where, in a mandamus proceeding against a carrier to prevent discrimination in the distribution of cars among certain coal companies, it was admitted that the carrier owned no coal cars, but obtained them from another railroad, and allotted cars to the several mining districts according to a specified rating, the court had power to fix the percentage of cars which the carrier should distribute to relator in proportion to the present output of relator's mine, there being nothing to indicate any threatened or probable change in such output.

In Error to the Circuit Court of the United States for the Northern District of West Virginia.

For opinion below, see 125 Fed. 252.

The Kingwood Coal Company was a corporation engaged in the mining and shipping of coal in Preston county, W. Va., on the line of the West Virginia Northern Railroad Company, and the Irona Coal Company and the Atlantic Coal & Coke Company were also so engaged, the mines of the three companies being the only collieries so located and operated.

May 1, 1903, the Kingwood Coal Company, as relator, filed its petition in mandamus under the acts of Congress of February 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154], March 2, 1889, c. 382, 25 Stat. 855 [U. S. Comp. St. 1901, p. 3158], and February 8, 1895, c. 61, 28 Stat. 643 [U. S. Comp. St. 1901, p. 3171], against the West Virginia Northern Railroad Company, J. H. Weaver, the Irona Coal Company, and the Atlantic Coal & Coke Company, in the Circuit Court of the United States for the Northern District of West Virginia, charging that the railroad company, in the transportation of the coal mined at said mines, which entered into and became part of the interstate commerce of the country, had been and was discriminating in favor of the Atlantic Coal & Coke Company and the Irona Coal Company and against the Kingwood Coal Company, and praying, on grounds set forth, that the court determine that the Kingwood Coal Company is entitled to 33⅓ per cent. of the total car supply furnished by the railroad company to shippers of coal along its lines, and that the railroad company and Weaver be required, "according to their several and respective powers," to cease to discriminate, and to furnish relator at least the percentage named.

An alternative writ of mandamus was thereupon issued to the railroad company and J. H. Weaver embodying the case stated in the petition; their codefendants being also summoned to appear.

To this writ the railroad company and Weaver filed their joint return and answer. It was admitted, among other things, that Weaver had no interest in the Kingwood Coal Company; that he held a majority of the stock of the Irona Coal Company; that he was the Atlantic Coal & Coke Company, which was a trading name adopted by him; that he owned a majority of the stock of the railroad company, was its president and a director, and exercised the powers and authority incident to the office "in controlling and directing the operation of said railroad, and as such was and is subject to the provisions of the hereinbefore recited act of Congress"; and that it was "the duty of the said railroad company, as a common carrier, and of the said J. H. Weaver, as an officer, to wit, president and director, of the said company, and his associates, according to their respective powers, to afford reasonable, proper, and equal facilities for the interchange of traffic between lines with which the said railroad company was and is connected, and for the receiving, for-

warding, and delivering of property and passengers to and from the several lines of the said railroad company, defendant, and to connections therewith."

Respondents denied all unlawful or unjust discrimination.

Issue having been joined, the cause was set for hearing on a day specified by an order of court which recited: "At which time, by consent of parties, the matters of law and fact arising herein shall be presented to and determined by the court upon testimony taken at the bar of the court, parties, both plaintiff and defendant, waiving their right to demand a jury herein." Hearing was accordingly had on pleadings and proofs, and the court announced its decision and opinion, whereupon relator obtained leave to amend and amended the alternative writ by striking out "thirty-three and one-third per cent." and inserting "thirty-one per cent.," to which respondent preserved an exception.

Judgment was thereupon entered "that the peremptory writ of mandamus do issue commanding the said West Virginia Northern Railroad Company and J. H. Weaver, according to their several and respective powers, to cease to make or give any undue or unreasonable preference or advantage to the Irona Coal Company or Atlantic Coal & Coke Company over the Kingwood Coal Company in the shipping and transportation of their coal, and to cease to subject the Kingwood Coal Company to any undue or unreasonable prejudice or disadvantage in the shipping and transportation of its said coal or in any respect whatsoever, and to move and transport the traffic of the said Kingwood Coal Company without preference or discrimination, and upon conditions as favorable as are given by the said West Virginia Northern Railroad Company to the said Irona Coal Company and Atlantic Coal & Coke Company, or for like traffic under similar conditions to any other shipper, its fair and reasonable percentage of cars furnished by the West Virginia Northern Railroad Company to shippers of like traffic along its railroad line, based upon the capacity of the several shippers; and to furnish to the said Kingwood Coal Company, for the transportation of its coal, without discrimination, and upon conditions as favorable as those given to other shippers, at least thirty-one per cent. of the total car supply at this time to be distributed by the said West Virginia Northern Railroad Company or J. H. Weaver among the several miners and shippers of coal along the railroad lines of the said West Virginia Northern Railroad Company"; and against the Railroad Company for costs.

Respondents duly excepted, and tendered a bill of exceptions containing the evidence, which was signed and filed. From this it appeared that respondents at the hearing moved the court to make and certify certain special findings of fact as set forth, "but the court, being of the opinion that the evidence heard upon said cause, the whole of the evidence being as hereinbefore set out, does not justify such special findings so prayed, refused to find the same, except in so far as a portion thereof deemed material by the court may be found in the written opinion of the court filed in this cause"; to which ruling respondents excepted. This writ of error was then allowed, and errors were assigned as follows: That the court erred (1) in entering judgment against the railroad company and Weaver jointly; (2) in entering judgment against the railroad company; (3) in entering judgment against Weaver; (4) in permitting the alternative writ to be amended; (5) in entering judgment compelling the delivery to the relator of 31 per cent. of the total of cars distributed, "for the evidence as heard and the facts as certified by the court show that the relator, the Kingwood Coal Company, has not a capacity equal to 31 per cent. of the total capacity of the three mines"; (6) "in refusing to certify the special findings of facts as prayed for"; (7) in entering the judgment rendered, "because the same takes as the sole basis and test of the capacity for the coal output of the Kingwood mine the number of working places therein, when its entire equipment, working places included, should have been considered in measuring its capacity."

P. J. Crogan and John H. Holt, for plaintiffs in error.

V. Gilpin Robinson and John W. Davis, for defendant in error.

Before FULLER, Circuit Justice, and MORRIS and PURNELL, District Judges.

FULLER, Circuit Justice (after stating the facts). Inasmuch as it appeared that the West Virginia Northern Railroad Company was not the owner of any of the cars used on its line for the transportation of coal, but that all such cars were furnished by the Baltimore & Ohio Railroad Company, over whose tracks the coal ultimately reached market, and that after the delivery of the cars to the West Virginia Northern Railroad Company they were distributed by it among the mines along its line, the question to be determined under the pleadings was stated in the careful opinion of Goff, Circuit Judge, returned as part of the record before us, and reported in 125 Fed. 252, to be whether the West Virginia Northern Railroad Company, in distributing the cars, made a just allotment of them among the three mines, or so assigned them as to unlawfully discriminate in favor of two of the mines against the other.

After pointing out that railroad companies could, by discrimination in distribution among competing coal companies, build up some and eventually destroy others, since the output was largely controlled by the number of cars available for use in sending the coal to market, prudent management requiring that no more coal should be mined at any time than could be promptly forwarded, and remarking on the danger of discrimination where the power of controlling the car supply happened to be dominated by an interest in the output and profits of some mines as contradistinguished from others, the Circuit Court ruled that in reaching a proper basis for the distribution of railroad cars it was necessary that the different elements which were essential factors in the finding of the daily output of the respective mines to share in the allotment should be carefully examined and considered, and this embraced such matters as "the working places, the number of mine cars and their capacity, the switch and tipple efficiency, the number and character of the mining machines in use, the hauling system and the power used, the number of miners and other employés, the mine openings and the miners' houses"; and that, while none of these elements could be safely said to be absolutely controlling, the working places, the available points at which coal could be profitably mined, were likely to be the most important, for "at each true working place a certain quantity of coal, to be determined by the thickness of the seam and conditions peculiar to the different coal fields, can be excavated and removed during stated periods of time; and so it follows that, if other essentials are adequate, the daily output of a mine can be computed by the number of its available working places." And the court said:

"The capacity of a coal mine for rating purposes is the amount of coal it is able to place in the railroad cars in a given time, and that depends on its working places, the thickness of its coal seams, its switches, workmen, mine cars and tipples, its general equipment, and its management. The output of a mine is the amount of coal it in fact places in the railroad cars for shipment, and that is regulated by the number of such cars it is able to secure, provided its general equipment is efficient; and it may be and generally is less than its capacity, but can never exceed it."

The Circuit Court found from the evidence that the three mines had all the mining paraphernalia requisite for the excavating and load-

ing of more coal than could be transported in the railroad cars allotted to them respectively; that each mine possessed all of the equipment required to handle all of the coal that could be mined from its working places; and that at the time the suit was instituted the Kingwood Coal Company could fairly count and work at least 65 working places, the Irona Coal Company at least 103, and the Atlantic Coal & Coke Company at least 45; and concluded' that the distribution should have allotted to the Kingwood Coal Company 31 per cent., to the Irona Coal Company 48 per cent., and to the Atlantic Coal & Coke Company 21 per cent. of the cars allowed the West Virginia Northern Railroad by the Baltimore & Ohio Railroad Company, whereas the West Virginia Northern Railroad Company apportioned to the Kingwood Coal Company 18 per cent., to the Irona Coal Company 56 per cent., and to the Atlantic Coal & Coke Company 26 per cent. The court held upon the facts that this allotment was not in accordance with the actual conditions, and that thereby the West Virginia Northern Railroad Company had arbitrarily increased the number of cars the Irona Coal Company was entitled to receive from 48 to 56 per cent., and the number to which the Atlantic Coal & Coke Company was entitled from 21 to 26 per cent., while it unjustly. reduced the number due the Kingwood Coal Company from 31 to 18 per cent.

The order of court setting the cause for hearing shows, and it is admitted by counsel, that "by consent of parties" a jury was waived, and the cause submitted to the court for determination; but the record does not disclose any "stipulation in writing waiving a jury," as prescribed by statute, and the only question of law reviewable on error would be the sufficiency of the alternative writ, or of the findings to support the judgment. Andes v. Slauson, 130 U. S. 435, 9 Sup. Ct. 573, 32 L. Ed. 989; Spalding v. Manasse, 131 U. S. 65, 9 Sup. Ct. 649, 33 L. Ed. 86. And even waiving the rigor of this rule, it is also well settled that on trial by the court the determination of the facts is binding if there be any evidence to sustain it. Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457. The fifth and seventh alleged errors may. therefore be dismissed as without merit, and are indeed not pressed by counsel.

As to the sixth, it appears from the bill of exceptions, which is unavailing if the rule laid down in Andes v. Slauson be applied, that the Circuit Court was requested to make certain special findings of fact, which the court, being of the opinion that they were not justified by the evidence, refused to do "except in so far as a portion thereof deemed material by the court may be found in the written opinion of the court filed in this cause." We do not understand that the court could be required to make findings of special issues of fact; and, moreover, the ground of complaint is that the judgment of the court was "founded alone upon the working spaces of the mine," whereas, as already seen, the court took into consideration all the factors asserted to be essential to a proper conclusion. This brings us to the other assignments of error, which involve the questions whether the Circuit Court erred (1) in allowing

the alternative writ to be amended, (2) in rendering judgment against the railroad company and Weaver jointly, or (3) against Weaver, or (4) against the railroad company.

1. The alternative writ, pursuing the terms of the petition, commanded respondents, "according to their several and respective powers," among other things, "to furnish to the said Kingwood Coal Company for the transportation of its coal, without discrimination, and upon conditions as favorable as those given to other shippers, at least thirty-three and one-third per cent. of the total car supply at this time to be distributed by you, or either of you, among the several miners and shippers of coal along the railroad lines of the said West Virginia Northern Railroad," or to show cause to the contrary. When the Circuit Court announced its conclusion that relator was entitled to 31 per cent. of the car supply, relator asked leave to amend, and on leave did amend, the alternative writ so as to conform to the facts as the court found them to be. We are of opinion that the court did not err in allowing the amendment to be made. The power to issue the writ is derived from the statute, and the strict rule of the common law in respect of amendments is not applicable in cases where the writ is ordinary process, and not prerogative. No reason exists why proceedings in mandamus under the statute should not be governed by the rules obtaining in the instance of ordinary legal remedies. High, Extr. Leg. Rem. (3d Ed.) § 519; Kentucky v. Dennison, 24 How. 66, 16 L. Ed. 717; United States v. Union Pacific R. R. Company, 4 Dill. 479, Fed. Cas. No. 16,601; Mexican Central Railway Company v. Duthie, 189 U. S. 76, 23 Sup. Ct. 610, 47 L. Ed. 715.

2. Weaver was unquestionably a proper party to the petition, and it was not objected below that the alternative writ should not have been directed to him as well as the railroad company. On the contrary, the return to that writ was a joint return, and admitted that Weaver was, in effect, in control of the railroad company; that what was done by the company was done through him as its executive head; and that it was his duty as the company's officer, as well as its duty, not to discriminate. The mandate was addressed to "the railroad company and J. H. Weaver, and each of them, according to their several and respective powers," while the judgment for costs went against the company alone. Such a mandatory order against a company and its officers and agents is not a joint judgment in the technical sense. The writ of mandamus may, indeed, be taken distributively when the action of several is necessary to the accomplishment of the end sought; and here Weaver was the controlling actor in the premises, and the order affected him only according to his powers.

3. These considerations dispose of the contention that the judgment, so far as operating on Weaver, was unauthorized, because he was not a common carrier; for, even if the acts of Congress were confined to common carriers, and assuming pro argumento that Weaver did not come within that category, which, under the circumstances, is not admitted, and aside from the provisions of the

act of February 19, 1903[1], the grant of the power to issue the writ of mandamus in respect of discrimination against a common carrier corporation necessarily embraced the power to act on the officers in control. Clearly, we cannot hold, on the face of this record, that the Circuit Court erred in holding Weaver, who was the Atlantic Company, the largest stockholder in the Irona Company and in the railroad company and the executive head of the latter, responsible for the discrimination, and in commanding him to refrain therefrom to the extent of his powers.

4. In support of the allegation of error in entering judgment against the railroad company it is insisted "that the court had no power in a proceeding of this character to fix the percentage of cars the relator should have, and to command that such percentage of cars should be furnished to the relator." The acts of Congress forbade discrimination, and made it unlawful to give any undue or unreasonable preference or advantage to particular persons, companies, corporations, or localities, or any particular description of traffic, or to subject them "to any undue or unreasonable prejudice or disadvantage in any respect whatsoever," and vested jurisdiction in the Circuit and District Courts to proceed by mandamus as a cumulative remedy for violations of the statutory provisions. The West Virginia Company owned no coal cars itself, but obtained them from the Baltimore & Ohio Railroad Company. That company could not and did not undertake to furnish all the cars demanded by shippers of coal over its lines, but allotted its cars to the several mining districts according to a specified rating. It was the admitted duty of the West Virginia Company to distribute the cars it received without unreasonable preference or prejudice. The determination of the percentage of the car supply to which the Kingwood Company was entitled as between it and the other collieries determined that less than that percentage would be unreasonably prejudicial to it, and unduly preferential to the others. From the pleadings and findings it must be assumed that each mine would be worked up to the supply of cars obtained by its owner, and it is evident that by discrimination one mine might be made to develop faster than another, while without discrimination the relative output of each mine would equitably regulate the apportionment. We are unable to accept the view that Congress intended to confine the scope of the writ to admonition merely, or to a general command to desist from discrimination, rather than from the particular action in which the discrimination consisted. By the

---

[1] Act Feb. 19, 1903, c. 708, § 2: "That in any proceeding for the enforcement of the provisions of the statutes relating to interstate commerce, whether such proceedings be instituted before the Interstate Commerce Commission or be begun originally in any Circuit Court of the United States, it shall be lawful to include as parties, in addition to the carrier, all persons interested in or affected by the rate, regulation, or practice under consideration, and inquiries, investigations, orders, and decrees may be made with reference to and against such additional parties in the same manner, to the same extent, and subject to the same provisions as are or shall be authorized by law with respect to carriers." 32 Stat. 848 [U. S. Comp. St. Supp. 1903, p. 363].

findings the delivery to relator of any less than 31 per cent. of the supply amounted to unlawful discrimination, and the judgment of the court did no more than to correct it.

The peremptory writ was ordered to issue commanding respondents to cease discrimination, "and to furnish to the said Kingwood Coal Company for the transportation of its coal, without discrimination, and upon conditions as favorable as those given to other shippers at least thirty-one per cent. of the total car supply at this time to be distributed by the said West Virginia Northern Railroad Company or J. H. Weaver among the several miners and shippers of coal along the railroad lines of the said West Virginia Northern Railroad Company." The writ related to the total car supply to be then distributed, and it is objected that because there might be changes in the output of the mines the mandate was impracticable of execution, and therefore erroneous. It is true that proceedings in equity are more elastic than proceedings at law, but the question before us is whether the order was justified when it was entered, and we perceive no reason for holding that it was not. Doubtless temporary causes may from time to time affect the output of a mine, yet the basis of distribution would remain unchanged. There is nothing in the present case to indicate any such threatened or probable change in the output of these mines as to impart weight to the argument ab inconvenienti.

Granting that the discrimination has resulted in diminishing the relative output of the Kingwood mine for lack of its just proportion of cars, that discrimination was unlawful, and the correct distribution and rating cannot be allowed to be affected by conduct contrary to law.

Judgment affirmed.