LOGAN COAL CO. v. PENNSYLVANIA R. CO.

(Circuit Court, E. D. Pennsylvania. July 1, 1907.)

No. 66.

CARRIERS—INTERSTATE COMMERCE—DISCRIMINATION—DISTRIBUTION OF CARS.

Under Pa. Const. 1874, art. 17, §§ 1, 3, 7, Interstate Commerce Act (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3155]), prohibiting discrimination by carriers either in rates or transportation facilities, and P. L. 1846, p. 323, § 21, requiring railroads to transport cars owned by individual shippers on reasonable rules and regulations, a rule providing that, in the distribution of the cars of a railroad company available for the transportation of coal, cars for the railroad's fuel supply, foreign railroad cars, specially consigned for the fuel supply of the consigning railroads, and individual cars owned by shippers and assigned to specified mines for loading, should be charged against the capacity of the mines at which they were placed, and that the difference between the rated capacity of the mine and the capacity of such assigned cars should be the rate on which all the other cars of the railroad company would be prorated. which rule operated slightly to the advantage of the owners of individual cars, was not objectionable as a discrimination against them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 84.]

Sur Petition for Mandamus.

D. L. Krebs, for petitioner.

Francis I. Gowen and John G. Johnson, for defendant.

HOLLAND, District Judge. This is a petition for mandamus, filed the 17th day of December, 1906, by the Logan Coal Company, a corporation organized and existing under the laws of Pennsylvania, relator, against the Pennsylvania Railroad Company, also a corporation organized and existing under the laws of the same state, requiring the defendant to cease from subjecting the relator to undue, unjust, and unreasonable discrimination in the distribution of cars for the transportation of coal from the relator's mines, and to compel the defendant to supply the relator at all times an adequate and sufficient supply of coal cars to receive and transport the bituminous coal mined and produced by it at its mines on the South Fork and Cambria & Clearfield branches of defendant's railroad to the points and places beyond the state of Pennsylvania. To this petition for a mandamus the defendant filed an answer, admitting many of the facts set forth in the petition, denying others, and stating some new matters important in the determination of the questions at issue. The case was argued upon bill and answer, and the facts, as we gather them from the petition and answer, are briefly: That the relator is engaged in mining and producing bituminous coal along the mountain division of the main line of the Pennsylvania Railroad, which mountain division extends from Altoona, in the state of Pennsylvania, west to a point near Conemaugh. Its mines are situate on the South Fork branch and the Cambria & Clearfield branch of the defendant's railroad. The railroad company failed to provide a supply of cars to the extent demanded at times for the transportation of bituminous coal produced along its lines, and the relator, about two years ago, purchased 150 coal cars, of 100,000 pounds capacity each, for the transportation of coal produced

at its mines to its trade beyond the lines of the state of Pennsylvania. This purchase was made with the knowledge and approval of the railroad company, and the cars were placed upon and used on the company's line for more than two years last past. Prior to January 1, 1906, these cars, thus owned by the relator, were distributed to its mines, and in addition thereto the relator received its pro rata share of the cars owned and controlled by the railroad company for the transportation of bituminous coal, which pro rata share was based upon the output capacity of the relator's mines, as ascertained and fixed by the railroad company, and was in addition to complainant's individual cars used by it. By this system of distribution, the relator prior to that time had been receiving the benefit and advantage of its individual cars, and, in addition thereto, its share, without any deduction whatever, of the railroad company's daily distribution of its own cars. On January 1, 1906, the officials of the defendant company put into force and operation the following order:

"Commencing January 1, 1906, assigned cars, i. e., cars for Pennsylvania Railroad Company fuel supply, foreign railroad cars especially consigned for the fuel supply of railroads consigning such cars, and individual cars assigned by the owners to specified mines for loading, will be charged against the capacity of the mines at which they are placed. The difference between the rated capacity of a mine and the capacity of the assigned cars placed for loading will be the rated capacity on which all cars will be prorated."

Since the adoption of the order of January 1, 1906, "Pennsylvania Railroad fuel cars," "especially consigned fuel cars," and "individual cars" have been taken into consideration by the railroad company in the assignment of cars to the coal mining companies along its route, and these cars have been charged against the capacity of the mines to which they have been assigned and placed, and the owners of individual cars receive a prorated share of the company's cars on a rated capacity represented by the difference between the rated capacity of such mines and the capacity of the assigned cars received by it. The object of the adoption of this rule was to place all shippers on an absolute equality as near as possible, and yet not discriminate against individual car owners, or those to whom cars were especially consigned for fuel. To illustrate the effect of the order on an individual owner of cars as compared with a competitor receiving only company cars; take two operators each having mines rated at 500 tons a day, and assume that on any given day the company has enough of its own cars on hand to deliver to all mines, cars which will take care of 70 per cent. of the output. Assume that one operator has individual cars available on that day for the shipment of 200 tons, while the other has no individual cars at all. The latter receives railway company cars capable of carrying 70 per cent. of 500 tons, or 350 tons. The former, on the day in question, will receive individual cars in which he can ship 200 tons, and his rating for a distribution of the company's cars for that day will be reduced to 300 tons, 70 per cent. of which is 210 tons, for the transportation of which he will receive company cars, so that the operator with the individual cars will be able to ship on the day instanced 410 tons as against a shipment of 350 tons by the operator

who has no individual cars. To this extent the relator has the advantage over its competitors who do not own individual cars, and it receives the exclusive use of its cars at all times.

Since the date mentioned, the defendant company has enforced this order of distribution of cars, and it is claimed by the relator that its adoption has resulted in a practical assumption of ownership of its individual cars by the railroad company, and works an undue and unreasonable discrimination against relator in favor of other bituminous miners who do not own individual cars; and it is further claimed that the defendant's system of distributing other cars assigned to relator by foreign railroads for their fuel supply and cars of the defendant railway company for its fuel supply works an unjust, undue, and unreasonable discrimination against relator in favor of other mine owners to which such consignments of cars are not made.

That a distribution of cars in accordance with the order of January 1, 1906, works an unjust and undue discrimination is denied in the answer, and is the question at issue in the case. Can the defendant railway company, in the distribution of its cars to bituminous mine owners along its route, treat individual cars and fuel cars especially assigned as it assumes to do in this order? The defendant company is engaged in the transportation of the relator's bituminous coal, together with that of other miners along its route, from points within the state of Pennsylvania to points beyond the state of Pennsylvania; that is to say, it is engaged in interstate commerce, and is subject to the provisions of the commerce act of the 4th day of February, 1887, and its supplements, the third section of which act it is claimed the defendant violates in its method of distributing cars. Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3155]. This section provides:

"That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Any violation of the provisions of this section, it was held in U. S. ex rel. Greenbrier, C. & C. Co. v. Norfolk & Western Ry. Co., 143 Fed. 266, 74 C. C. A. 404, can be remedied by mandamus proceedings, under section 10 of the Act of March 2, 1889 (chapter 382, 25 Stat. 862 [U. S. Comp. St. 1901, p. 3172]), amending the commerce act, part of which is as follows:

"That the Circuit and District Courts of the United States shall have jurisdiction upon the relation of any person or persons, firm, or corporation, alleging such violation by a common carrier, of any of the provisions of the act to which this is a supplement, and all acts amendatory thereof, as prevents the relator from having interstate traffic moved by said common carrier at the same rates as are charged, or upon terms or conditions as favorable as those given by said common carrier for like traffic under similar conditions to any other shipper, to issue a writ or writs of mandamus against said common carrier, commanding such common carrier to move and transport the traffic, or to furnish cars or other facilities for transportation for the party applying for the writ." etc.

It is clear that the third section of the commerce act prohibits any unlawful or undue and unreasonable discrimination against shippers along the line of a railway company engaged in interstate commerce, in the distribution of cars or in the performance of any other of its duties as a common carrier, which the public has a right to require of it. Any violation of this provision can be reached and rectified by mandamus proceedings authorized under the section above referred to. The defendant company, by the laws of the state of Pennsylvania, under which it was incorporated, and through which the greater portion of its lines extend, and by the Constitution of the state, is required to observe certain provisions tending toward a fair and equal treatment of all shippers who may desire to transport merchandise or travel as passengers upon its lines. By article 17 of the Constitution of Pennsylvania of 1874 (section 1), it is provided that:

"All railroads and canals shall be public highways and all railroad and canal companies shall be common carriers."

The third section of the same article provides that:

"All individuals, associations, and corporations shall have equal right to have persons and property transported over railroads and canals, and no undue or unreasonable discrimination shall be made in charges for, or in facilities for, transportation of passengers within the state or coming from or going to any other state. Persons and property transported over any railroad shall be delivered at any station at charges not exceeding the charges for transportation of persons and property of the same class and same direction to any more distant station; but excursion and commutation tickets may be issued at special rates."

And in section 7 of this article it is provided:

"No discrimination in charges or facilities for transportation shall be made between transportation companies and individuals or in favor of either by abatement, drawback or otherwise, and no railroad or canal company or any lessee, manager or employee thereof shall make any preference in furnishing cars or motive power."

The defendant company, having accepted the provisions of the state Constitution of 1874, is bound thereby, as well as by the provisions contained in the act of assembly approved the 13th day of April, 1846 (P. L. 323), following, under which it was organized:

"Sec. 21. That upon the completion of said railroad, or any part thereof, the same shall be esteemed a public highway, for a conveyance of passengers and transportation of freight, subject to such rules and regulations in relation to the same, and to the size and construction of wheels, cars and carriages, the weight of loads and all other matters and things connected with the use of said railroad, as the president and directors may prescribe and direct; provided, that the said company shall have the exclusive control of the motive power, and may from time to time establish, demand and receive, such rates of toll or other compensation, for the use of the said road, and of said motive power, and for the conveyance of passengers, the transportation of merchandise and commodities, and cars or other vehicles containing the same, or otherwise, passing over or on said railroad, as to the president and directors shall seem reasonable: Provided, however, nevertheless, that said rates of toll and motive power charges, so to be established, demanded or received, when the cars used for such conveyance or transportation are owned or furnished by others, shall not exceed two and one-half cents per mile for each passenger, three cents per mile for each ton of two thousand pounds of freight; three

cents per mile for each passenger or baggage car, and two cents per mile for each burden or freight car, every four wheels being computed a car: and in the transportation of passengers no charge shall be made to exceed three cents per mile for through passengers and three and one-half cents per mile for way passengers."

It will be observed that this act of 1846 recognizes the right of shippers along the route of the railway to own private or individual cars, and the railroad company is required to permit their use upon its tracks.

The Supreme Court of the state of Pennsylvania, in the case of Boyle v. Philadelphia & Reading Railway Co., 54 Pa. 310, construing a charter of the Philadelphia & Reading Railway Company, which in respect to the feature in regard to the use of individual cars was similar to the obligation imposed on defendant company, there said:

"From these provisions of the Acts of Assembly, it is plain that the company was incorporated both as a railroad and a transportation company. As a railroad company, they had power to construct and maintain a railroad from Philadelphia to Pottsville, and to charge and receive tolls from those who might transport either merchandise or passengers over it. As a transportation company, authority was given them to transport either passengers or the property of others over their own road, in their own cars, and with their own motive power. Both these agencies for transportation—that of the company and that of others using the roadway of the company to transport for themselves—were evidently in the mind of the Legislature. That it was contemplated others beside the company might use the road after its completion, and might transport upon it their own property as well as passengers, might put cars and carriages upon the road, is beyond question. If not, the entire twentieth section of the original act (the act of 1833 [P. L. 154]) is unmeaning and even absurd. The road was to be a public highway, as truly such as is a canal or turnpike road, though it was placed under the care, management, and regulation of its owners."

It would appear, therefore, that the company is both a "transporting" and a "railroad" company, using these terms in the sense in which they were used by the Supreme Court of Pennsylvania in the case just referred to, and is obliged to transport merchandise in individual cars when offered by shippers; but there is nothing in either the decisions of the state of Pennsylvania or the acts of assembly which require that this obligation as to the use of individual cars upon its track shall be performed to the public in such a way as to unduly, unjustly, and unreasonably discriminate against the owner of individual cars, or against other shippers who may not have such cars in which to transport their merchandise, because, not only in the Constitution of the state of Pennsylvania, but also in the commerce act, it has been declared that railroads shall not in any way whatsoever discriminate in the performance of its duty as a common carrier in the transportation of persons or property. This requirement of absolute fair treatment to all along the line of a railway company is paramount, and is the primary rule of action upon which the railroad company is required to conduct its business, and the basis upon which it is required to treat all shippers who may apply for the transportation of their property, and all persons who may desire to be transported as passengers. All other obligations laid upon transportation and railroad companies engaged in interstate commerce must be performed consistently with this paramount requirement of equal treatment to all, and while the Pennsylvania act of 1846 un-

doubtedly requires the defendant company to accept and transport property shipped in individual cars, there is nothing in the law which requires it to do so, or to use its own cars in connection with the individual cars in the transportation of property along its line in such a manner as to work a disadvantage to either the relator or to the relator's competitors in the mining and transportation of bituminous coal. It must accept the individual cars in connection with its own, so that all shippers of bituminous coal along its route will receive the same treatment and enjoy the same facilites for the transportation of their produce as any other; and when a practice which has been followed is found to work unjustly, and to the disadvantage of one shipper in favor of another, under the broad and peremptory terms of the commerce act, it is the duty of the common carrier to so alter and adjust the practice that the discrimination effected against the shippers will be eliminated. Does this order of January 1, 1906, work a discrimination against the relator? We think not. At the time of the purchase of these cars by the relator, the defendant company had an equipment of coal cars adequate for the transportation of coal which all the producers on its line could produce and dispose of, and for which, consequently, cars would be required, if the operators would have been willing to so adjust and regulate their shipments as to utilize the company's car equipment with reasonable uniformity and regularity throughout the year, and to promptly load and unload the same, and of these cars the relator was entitled to a fair share. The relator saw fit to purchase for its own use the individual cars in question, and in accordance with its right under the laws of Pennsylvania is entitled to have them transported by the defendant company. This, of course, placed an additional burden upon the company's other facilities in favor of the relator, and at that time, and since that time, down to the filing of this petition, the growth in the number of individual cars has been so great that, in connection with the company's own car equipment and foreign cars which are used upon its road, the pressure of business upon the other facilities for moving freight, due to an almost unprecedented increase in its business, became so great that at times the company's facilities for moving the bituminous coal cars were overtaxed, and in order to do exact justice to all shippers of bituminous coal it became necessary for the defendant company to distribute all available cars on a basis that the owner of individual cars should not receive an undue share of the company's already overtaxed facilities to move cars. The relator under the order receives a slight advantage, as shown in the above illustration, over its competitors, in that it receives a pro rata of the defendant's cars upon a basis calculated on the difference between its rated capacity of the mine and the capacity of all its individual cars. As has been shown, this enables the relator to ship somewhat more of its daily output than a competitor who only receives the use of company cars, and, in addition, under an agreement, it receives from the defendant company a certain compensation, the amount of which is not stated, but which, however, is said not to be sufficient to pay the relator interest on the investment and cost of repairs. It is true the defendant company is required to furnish sufficient facilities at all times

to transport the merchandise of shippers along its route, but it occurs in the bituminous coal mining industry in certain of the winter months of the year that the extraordinary demand for bituminous coal is far beyond the car capacity of the railroad company to transport, and it is conceded that the railroad company is not required to keep a car equipment sufficiently extensive to meet the maximum output at any part of the year, but that it is only required to furnish car facilities to bituminous coal shippers to meet a demand adjusted and regulated to utilize the company's car equipment with uniformity and regularity throughout the year. This, however, it appears the operators are unable to do, and it seems to me that when an operator elects to avail himself of his right under the laws of Pennsylvania to place individual cars upon the company's tracks, he must do so subject to such rules and regulations adopted by the railway company as will work out a result in accord with the requirements of the laws of the state of Pennsylvania and the provisions of the interstate commerce act, requiring equal facilities for all.

The relator is not in any sense discriminated against. First, it has the use of its own cars, and its share of company cars upon a basis which gives it a certain advantage over its competitors, and, in addition, it receives a certain compensation from the railroad company for its cars. They are placed upon the tracks of the defendant company, and the engines and the train crews and the moving facilities of the company are taxed to transport these individual cars, and there is no reason that I can see why they should not be regarded in the distribution of cars to shippers as part of the equipment, in order that the defendant company may be enabled to treat all shippers the same, and, as near as may be, at all times in the year furnish car facilities for the transportation of coal along its line, upon a basis fixed upon the rated capacity of the mine as ascertained by the method adopted by the railway company. There is no complaint that the company has in any way discriminated for or against any of the operators by its method of ascertaining the output capacity of the mines.

What has been said in regard to individual cars applies to the use of fuel cars, whether they be those of the defendant company, or fuel cars of other corporations purchasing coal from the relator. They should be treated the same as individual cars in the distribution of available cars, and the defendant company in its treatment of these cars by the order of January 1, 1906, in no way that we can see unduly or unreasonably discriminated against the relator. This precise question has not heretofore been considered, but the question of car distribution to shippers, including individual and fuel cars, has been before the courts in a number of cases, and the general trend of the decisions is to the effect that all cars, whether individual cars or owned by the railroad company, or assigned by other railroad companies for fuel, shall be treated as an available car equipment as a whole, distributable pro rata, to shippers desiring their use along the line, upon a basis giving each equal facilities with the other. Following are some of the cases in which these questions have been considered: U. S. ex rel. Coffman v. Norfolk & Western Railway Co. (C. C.) 109 Fed. 831; United States ex rel. Kingwood Coal Co. v. West Virginia & Northern Railroad Co.

et al. (C. C.) 125 Fed. 252; West Virginia & Northern Railroad Co. et al. v. United States ex rel. Kingwood Coal Co., 134 Fed. 198, 67 C. C. A. 220; United States ex rel. Greenbrier Coal & Coke Co. v. Norfolk & Western Railway Co., 143 Fed. 266, 74 C. C. A. 404; State ex rel. v. C., N. O. & T. P. Ry. Co., 47 Ohio St. 130, 23 N. E. 928; United States ex rel. Pitcairn Coal Co. v. B. & O. R. Co. et al., 154 Fed. 108.

For the reasons stated, the petition for a mandamus is dismissed.