**OZARK PIPE LINE CORPORATION v. DECKER (two cases).**

Circuit Court of Appeals, Eighth Circuit. March 27, 1929.

Nos. 8214, 8215.

James R. Van Slyke, of St. Louis, Mo. (Koerner, Fahey & Young, of St. Louis, Mo., on the brief), for appellant and plaintiff in error.

Edgar P. Mann, of Springfield, Mo. (J. R. Kirkham, of Dixon, Mo., Homer Rinehart, of West Plains, Mo., and Mann & Mann, of Springfield, Mo., on the brief), for appellee and defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. This cause was brought to this court both by appeal and by error. The appeal is the proper proceeding, and the writit of error will be dismissed. This was an action at law against appellant, hereafter called defendant, for damages claimed to have been sustained by appellee, hereafter called plaintiff, because of oil that escaped from a pipe line operated by the defendant. A jury was waived by a stipulation in writing. A judgment was rendered in favor of the plaintiff. The defendant assigns as error that the court refused findings of fact which it had requested, but, where a trial by jury is waived by a written stipulation, the refusal of findings of fact tendered, even though they are correct deductions from the pleadings and evidence, is not error, because the making of special findings of fact is entirely discretionary with the court. Sections 649, 700, Rev. Stats. (28 U. S. Code [28 USCA] §§ 773, 875); Insurance Company v. Folsom, 18 Wall. 237, 249, 21 L. Ed. 827; Clement et al. v. Phœnix Ins. Co., Fed. Cas. No. 2,882; Folsom v. Mercantile Ins. Co., Fed. Cas. No. 4,903; Marye v. Strouse (C. C.) 5 F. 494, 497; City of Key West v. Baer (C. C. A.) 66 F. 440, 444; Ætna Life Ins. Co. v. Board of County Com'rs. (C. C. A.) 79 F. 575, 576; State Nat. Bank v. Smith (C. C. A.) 94 F. 605, 609; Consolidated Coal Co. v. Polar Wave Ice Co. (C. C. A.) 106 F. 798, 799; Berwind-White Coal Min. Co. v. Martin (C. C. A.) 124 F. 313, 314; West Virginia Northern R. Co. v. United States (C. C. A.) 134 F. 198, 202; School Dist. No. 11 v. Chapman

No.

(C. C. A.) 152 F. 887, 894; United States v. Atchison, T. & S. F. Ry. Co. (C. C. A.) 270 F. 1, 4; Ewert v. Thompson (C. C. A.) 281 F. 449, 451; Denver Live Stock Commission Co. v. Lee (C. C. A.) 18 F.(2d) 11, 16.

The other assignments of error are not reviewable under the provisions of the Revised Statutes cited above, with the exception of the sufficiency of the evidence to support any judgment in favor of the plaintiff. This question was properly saved. The requested declaration was as follows: "The court declares the law to be that under the pleadings and evidence in this case, the plaintiff is not entitled to recover against the Ozark Pipe Line Corporation, and the decision and judgment of the court is in favor of the defendant."

In the case of St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 96, 13 S. Ct. 485, 37 L. Ed. 380, an examination of the record discloses the plaintiff, at the close of all the evidence, made the following request: "The court declares the law to be that under the pleadings and evidence plaintiff is entitled to judgment for $22,635, with interest at the rate of 6 per centum per annum from the day this action was commenced." This declaration was refused by the court, and the plaintiff excepted. The Supreme Court in its opinion, said:

"At the threshold of the case we are met with the objection that there are no special findings of facts, and that, therefore, our inquiry is limited to questions arising upon the pleadings, or upon rulings made by the court during the progress of the trial. We have had occasion in a recent case, coming from the same court, to consider to what extent our inquiry may go in a case tried by the court without a jury, in which there are no special findings of facts, and it is, therefore, unnecessary to consider that question at length. Lehnen v. Dickson, ante [148 U. S. 71, 13 S. Ct. 481, 37 L. Ed. 373]. It is enough to say that in this case there was, as appears by the bill of exceptions, an application at the close of the trial for a declaration of law, that the plaintiff was entitled to judgment for the sum claimed, which instruction was refused, and exception taken; and this, as was held in Norris v. Jackson, 9 Wall. 125 [19 L. Ed. 608], presents a question of law for our consideration."

See Martinton v. Fairbanks, 112 U. S. 670, 673, 5 S. Ct. 321, 28 L. Ed. 862; Adkins v. W. & J. Sloane (C. C. A.) 61 F. 791, 792; National Bank of Commerce v. First Nat. Bank (C. C. A.) 61 F. 809, 810; Citizens' Bank v. Farwell (C. C. A.) 63 F. 117, 119; Union County Nat. Bank v. Ozan Lumber Co. (C. C. A.) 179 F. 710, 712; Wear v. Imperial Window Glass Co. (C. C. A.) 224 F. 60, 63.

The pleadings and evidence show that in 1917 a pipe line was constructed across portions of the states of Oklahoma and Missouri, and it has been used most of the time since it was constructed in carrying crude oil or other petroleum products. The defendant has operated the pipe line since December 31, 1919. The plaintiff owns 420 acres of farm land in Missouri, and the pipe line extends for about a half mile across a portion of it. The line was constructed by virtue of an easement granted by a deed of the plaintiff. The damages claimed by the plaintiff arise from the deprivation of the use of a spring of water which he claims to have been polluted, because of oil escaping from the pipe line. The spring is situated near to the plaintiff's residence, and was used for domestic purposes and for drinking water for plaintiff's live stock. The plaintiff had obtained a judgment by consent in the state court, in a prior suit against the defendant upon a petition filed August 4, 1921, which alleged that the spring had become contaminated, that the waters had been rendered unfit for use, and that the spring had become a total loss to the plaintiff, because the defendant had allowed the pipe line to be broken on numerous occasions in 1920 and subsequently, so that the escaping oil had entered into the water that fed the spring. That judgment was paid by the defendant. In the suit which resulted in the judgment from which this appeal is now prosecuted, the plaintiff alleged negligence of the defendant in the use, control and operation of its pipe line after the —— day of September, 1921, and until November 29, 1926, causing a pollution of the spring during that period. The answer of the defendant included a general denial, an assertion of the former judgment as an estoppel and a plea of accord and satisfaction. By reason of these issues, it was incumbent on the plaintiff to prove that the defendant's acts or neglect in the period between August 4, 1921, and November 29, 1926, had injured his spring.

The evidence showed that the pipe line was buried in a trench, where it crossed the plaintiff's land and extended into a portion of land adjoining the land of plaintiff and belonging to the plaintiff's brother. The trench was about 28 or 30 inches deep, excavated in the soil and in the rocks underlying portions of the soil. The pipe was of cast iron, about 10 inches in diameter, and

in lengths of about 30 feet each. They were attached to each other at the joints by a short length of pipe, slightly larger in diameter, called a collar, which was threaded in the inside, and into which the lengths were screwed by means of a corresponding thread on the outside of the lengths. Occasionally there was a flange joint.

The plaintiff's spring was about 600 yards from the nearest point on the pipe line. In August, 1920, a break or rupture of the pipe line had occurred about 60 yards east of the point where the pipe line was closest to the spring. The contour of the land, and the nature and slope of the strata of soil and underlying rocks, was such that the oil that escaped could permeate this strata and enter into the subterranean drainage and flow of waters, and be carried into the spring, or could percolate directly into the spring. There had been other ruptures of the pipe line in 1919, somewhere near the plaintiff's farm, from which oil had escaped. The contamination of the water in the plaintiff's spring began about September, 1920, and has continued in about the same degree ever since, so that the water has never been potable. Analyses made show that the cause is some petroleum product in solution or suspension.

The defendant contends that there was no evidence from which it could be found that the condition of the spring since August 4, 1921, was attributable to any act or neglect on its part after that date. There was undisputed testimony by chemists appearing as witnesses for plaintiff and defendant that the contamination could have come from oil that had been in the ground for a number of years, and that, after such oil had entered the soil or rocky strata beneath and polluted the spring, that condition of the spring would last indefinitely, at least for 10 or 15 years. There was no attempt in the testimony to trace the oil that was found in the spring after August 4, 1921, to any definite leak existing in the pipe line after that date. No exploration of the soil was made, either along the pipe line or between it and the spring. No endeavor was made to show that the effects of the leakages before August 4, 1921, had passed away, or that that oil did not thereafter enter into the spring. The plaintiff's case rested upon testimony that some other leakages had existed after that date, and upon the theory that those leakages might have caused a new contamination.

There was testimony that there were one or more breaks in the pipe line in 1922, 1923, or 1924 on the farm of the plaintiff's brother, at some indefinite place at least a third of a mile from the spring, but whence the surface of the ground sloped towards the spring. The witness who saw this said there was perhaps a bucket full or barrel full of oil in the trench when repairs to the pipe were being made.

There was no rupture of the pipe line upon the plaintiff's farm during the period in question. There is some indefinite testimony as to what are called "collar leaks"—a term used to denote small leaks, where the threads between the lengths of pipe and the collar did not make an oil-tight joint. Some of these occurred on the plaintiff's land, and some on his brother's land; but the location of them is not fixed, and the testimony as to some of them fixes no date for the occurrence, whether before or after August 4, 1921.

There was testimony that there had been some temporary collar leaks somewhere on plaintiff's land since 1921, and some on his brother's lands. The record does not show just how much oil escaped from these leaks, but it was a small amount. There was no substantial evidence that any of the oil from any of the ruptures or collar leaks occurring after August 4, 1921, found its way into the waters that entered the plaintiff's spring. There was a possibility that the contamination of the spring came from these occurrences, but the testimony makes it equally possible that the contamination arose from the prior leaks, for the results of which the plaintiff had recovered a judgment. Whether this action be regarded as one based on negligence, or as one based on the maintenance of a nuisance, the plaintiff was not entitled to a recovery. The plaintiff must establish the fact that his injury was caused by the acts charged.

The general principle stated in a negligence case as follows: "And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employé is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of

proof resting upon all plaintiffs" (Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 663, 21 S. Ct. 275, 277 [45 L. Ed. 361])— applies to the ambiguity of proof in this case.

The judgment will be reversed, and a new trial ordered.