## PEOPLE'S LOAN & INVESTMENT CO. v. UNIVERSAL CREDIT CO.

### No. 10042.

Circuit Court of Appeals, Eighth Circuit.
Jan. 28, 1935.

Miles, Armstrong & Young, of Ft. Smith, Ark., for appellant.

Royden Dixon, of Memphis, Tenn. (Clinton R. Barry, of Ft. Smith, Ark., on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment in an action of replevin in which appellee was plaintiff, and appellant and two others were defendants.

The prayer for relief in the complaint was for a return of the property, or, in the alternative, for a money judgment. The latter was given. The amount is not in dispute.

The case was tried to the court, a jury having been duly waived.

At the close of the testimony, appellant, one of the defendants, requested the court to make certain findings of fact and rulings of law. The court refused the request, and the defendant excepted.

In the judgment entered, the court found generally for the plaintiff and against appel-

lant; the plaintiff having dismissed as to the other defendants, Reed-Johns Motor Company and B. C. Reed.

We are met at the outset by the contention of appellee that the judgment of the trial court on the merits of the ·case is not open to review in this court because no sufficient· motion was made by appellant for judgment in its favor at the close of the evidence.

 We cannot agree with appellee in this contention. It is true that this court has many times said that in a case tried to the court, a jury being duly waived, in order to secure review of the question whether· the judgment is sustained by substantial evidence, there must be called to the attention of the trial court the precise question and the specific ground on which the party raising the point relies. But there is no exact formula of particular words necessary. The point may be raised by motion for judgment on the ground that the pleadings and the evidence will not support any judgment except for the moving party; or it may be raised by a properly worded request for a declaration of law; or it may be raised by a properly worded request for findings of fact and rulings of law; or perhaps it may be raised by other methods. The vitally necessary requirement is to bring to the direct attention of the court the contention that the pleadings and the evidence will not support a judgment except for the moving party. Such, in effect, are the holdings in the following cases: Fleischmann Co. v. United States, 270 U. S. 349, 356, 46 S. Ct. 284, 70 L. Ed. 624; City of St. Louis v. Western Union Tel. Co., 148 U. S. 92, 13 S. Ct. 485, 37 L. Ed. 380; Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; Perry v. Wiggins, 57 F.(2d) 622 (C. C. A. 8); Federal Intermediate Credit Bank v. L'Herisson, 33 F.(2d) 841 (C. C. A. 8); Ozark Pipe Line Corp. v. Decker, 32 F.(2d) 66 (C. C. A. 8); United States v. Atchison, T. & S. F. Ry. Co., 270 F. 1 (C. C. A. 8); Bunday v. Huntington, 224 F. 847 (C. C. A. 8); Wear v. Imperial Window Glass Co., 224 F. 60 (C. C. A. 8); Seep v. Ferris-Haggarty Copper Mining Co., 201 F. 893 (C. C. A. 8); United States F. & G. Co. v. Board of Com'rs, 145 F. 144, 151 (C. C. A. 8); Barnard v. Randle, 110 F. 906 (C. C. A. 8); Mercantile Trust Co. v. Wood, 60 F. 346 (C. C. A. 8).

 We think that the requested findings of fact and rulings of law in favor of defendant in the case at bar should be read together, and, when so read, that they were sufficient for the desired purpose.

. The request sets out fully the proposed findings of fact claimed to have been proven and the conclusions of law which logically followed therefrom.

The court was fully informed as to the exact claim of defendant and the precise ground on which the claim was based. We think the question thus raised is open to review in this court.

We turn to the merits.

The salient facts disclosed by the record are substantially as follows: The Reed-Johns Motor Company was a corporation engaged in selling automobiles at Paris, Ark. Appellee, Universal Credit Company, is a Delaware corporation, known in the automobile trade as a "Finance Company." It was doing business at Memphis, Tenn. It limited its operations to transactions with the Ford Motor Company and dealers handling Ford cars. The defendant (appellant) is a corporation ·doing business as a "Finance Company" at Fort Smith, Ark.

Appellee claims that the steps of the transactions involved in the case at bar were substantially as follows: The dealer (Reed-Johns Motor Company) would place its order with the Ford Motor Company at Memphis, Tenn., for certain cars; the Ford Motor Company would execute a bill of sale of the cars ordered to the Universal Credit Company (the appellee), and send this with a trust receipt, draft for initial small payment, and bill of lading to its own order, destination Paris, Ark., through its own bank at Memphis, to the First National Bank at Paris, Ark., with a letter of instructions. The Ford Motor Company would also mail to the dealer (Reed-Johns Motor Company) a copy of the invoice covering the cars shipped. This copy of the invoice had stamped across its face the following: "Cars covered by this invoice are the property of Universal Credit Company until properly released by dealer upon payment of the amount due thereon."

The dealer would call at the Paris, Ark., bank, pay the amount of the draft, execute the trust receipt, receive from the bank the bill of lading, surrender the same to the railroad company, and receive the cars. The bill of sale and the trust receipt in each transaction were contained on the same sheet of paper. The printed blank forms were furnished to the Ford Motor Company by the Universal Credit Company. This bill of sale and trust receipt, after the execution of the latter by the ·dealer at Paris, Ark., were returned by the Paris bank either directly to the Universal Credit Company or

to the Ford Motor Company. A copy of one out in the margin. (The provisions are the
of the bills of sale and trust receipts is set same in all).[1]

---

**1 Bill of Sale**

Universal Credit Company

Know All Men By These Presents, that the undersigned for valuable consideration does hereby grant, sell, transfer and deliver unto the Universal Credit Company (Grantee), the following Motor Vehicles:

| Make | B/L. Railroad | Car Number | Initials |
|------|---------------|------------|----------|
| Ford | RI FTSS&RI | 151198 | SF |

| Shipper Fills In | | | Shipper Leaves Blank |
|---|---|---|---|

| Description of Motor Vehicles Type / Motor No. | | No. | Amt. Due UCC Each Car | Date Paid |
|---|---|---|---|---|
| Std. Cpe. | 4624391 | 1 | 405.00 | |
| Pickup CC | 4767678 | 2 | ~~280.00~~ | Feb. 17 |
| Dex. Tudor | 4668671 | 3 | 429.00 | |
| 131" Trk. HSCCSW | 4817637 | 4 | ~~475.00~~ | Dec. 9 |
| | | 5 | | |
| | | 6 | | |

| Dealer's Name and Address ↓ Start First Letter of Name Directly Under Arrow Reed-Johns Motor Co., Paris, Ark. | Term | Month | Day | Year | Identification No. |
|---|---|---|---|---|---|
| | 90 | 2 | 15 | 32 | No. 476903 |

To have and to hold all and singular the said goods and chattels to said grantee, its successors and assigns. The undersigned covenants with said grantee that undersigned is the lawful owner of said chattels; that they are free from all encumbrances; that undersigned has a good right to sell the same; that undersigned will warrant and defend same against the lawful claims and demands of all persons.

Witness the hand and seal of the undersigned this date Nov. 3, 1931.

Ford Motor Company (Seal)<br>
(Shipper)<br>
By J. R. Miller,<br>
Asst. Cashier (Official Title)

38.05

---

**Trust Receipt**

Received of Universal Credit Company the Motor Vehicles described above.

I (we) hereby acknowledge that said Motor Vehicles are the Property of Said Universal Credit Company, and agree to take and hold the same, at my (our) sole risk as to all loss or injury, for the purpose of storing said property; and I (we) hereby agree to keep said Motor Vehicles brand new and not to operate them for demonstrating or otherwise, except as may be necessary to drive said Motor Vehicles from freight depot or from above city to my (our) place of business with all due care at my (our) risk en route against all loss and damage to said Motor Vehicles, Persons or Property, and to return said Motor Vehicles to said Universal Credit Company, or its order upon demand; and pay and discharge all taxes, encumbrances and claims relative thereto. I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of any of said motor vehicles to any other person until after payment of corresponding amount shown on Dealer's Record of Purchase and Release of like identification number herewith. I further agree that the deposit made by me (us), in connection with this transaction, may be applied for reimbursement for any expense incurred by Universal Credit Company, in the event of breach of this Trust or repossession of said Motor Vehicles.

It is further agreed that no one has authority to vary the terms of this Trust Receipt.

Executed at Paris, Ark. 
Witness T. C. Blair

Date Nov. 17, 1931<br>
Reed-Johns Motor Co.<br>
(Dealer)<br>
By Everett Johns<br>
(Official Title if Company)

Appellee further claims that the basis for this method of handling the transactions is to be found in the agreement or understanding evidenced by the application of the dealer to the Universal Credit Company for credit accommodation in September, 1929, and in the approval of the application by the Universal Credit Company on September 12, 1929, which documents were transmitted to the Ford Motor Company; and that the proof that this was the method of handling the transactions is to be found in the testimony as to actual occurrences subsequent to 1929.

The controversy in the case at bar has arisen because the dealer (Reed-Johns Motor Company), in addition to the trust receipts sent to the Universal Credit Company, executed so-called trust receipts (similar in many respects to those executed and delivered to appellee) to appellant covering the cars in controversy; and appellant, learning of the dealings with the appellee, took possession of the cars from the dealer.

It is claimed by appellant that the cars involved in the present suit were not handled under the agreement with the Universal Credit Company, but under a direct sale agreement between Ford Motor Company and Reed-Johns Motor Company.

The trial court rejected a proposed finding that the cars in controversy in the present suit were sold directly by the Ford Motor Company to the Reed-Johns Motor Company, and that the Universal Credit Company never had title thereto.

■ Although the exact legal nature of a trust receipt and the exact legal nature of the relationship between the signer of a trust receipt and the finance company to which the trust receipt is delivered has given rise to much litigation, and to diversity of opinion in the Courts, yet it is generally held that the law of the state where the trust receipt is executed is controlling as to its interpretation and validity. Notes in 25 A. L. R. 332 and 49 A. L. R. 282; In re Collinwood Motor Sales (C. C. A.) 72 F.(2d) 137; In re Otto-Johnson Mercantile Co. (D. C.) 52 F. (2d) 678; In re Bell Motor Co., 45 F.(2d) 19 (C. C. A. 8).

■ In the case at bar the trust receipts given to the Universal Credit Company were executed in the State of Arkansas. No statute of the state of Arkansas, nor any decisions of its courts bearing directly upon these matters, have been called to our attention. However, by the great weight of authority, one of the salient features of the transaction in which a trust receipt is employed is that the party acting as the finance company takes title to the property directly from some party other than the maker of the trust receipt; generally from the seller of the property.

The rights incident to such title will generally be enforced, not only against the signer of the receipt, but also as against his receiver, trustee in bankruptcy, and creditors generally. In re Bell Motor Co., supra; and see cases cited, in notes, 49 A. L. R. 282 et seq.

In the case of In re Bell Motor Co., supra, this court, speaking by Judge Gardner, though not committing itself on the question as to the exact legal nature of a trust receipt, said, page 23 of 45 F.(2d) : "The courts generally have given effect to the express provisions of the trust receipt, and one of these provisions is to the effect that the goods or property is held as the property of the party to whom the receipt is given."

■ Moreover, in Arkansas, in case of a sale of a chattel with reservation of title in the seller, the title remains in the seller even as against a purchaser from the vendee in good faith and without notice. Meyer v. Equitable Credit Co., 174 Ark. 575, 297 S. W. 846.

■ And in Arkansas a conditional sale contract is not required to be recorded. Id.; Howell v. Thew Shovel Co., 184 Ark. 777, 43 S.W.(2d) 366; Sternberg v. Libby, McNeill & Libby, 186 Ark. 1167, 57 S.W.(2d) 1034.

■ In the case at bar, it is to be noted that the trust receipts made by the dealer to the appellee were not executed until the bill of sale had been executed by the Ford Motor Company to the appellee; while the so-called trust receipts made by the dealer to appellant were executed by the dealer without any title having been vested in the appellant. The invoices sent by the Ford Motor Company to the dealer vested no title in the dealer, but expressly stated that the cars covered by the invoice were the property of the Universal Credit Company. In the transaction, the dealer received no title to the cars, but only possession of them. Title passed directly from the Ford Motor Company to appellee, and that title was not impaired by any provisions in the trust receipt.

■ We do not find it necessary to pass upon the question of the exact legal nature of the trust receipts, but it seems clear from the decisions heretofore cited that the trust receipts in the case at bar given to the Universal Credit Company were valid, even

without recordation, not only as against the Reed-Johns Motor Company, but also as against the appellant.

We think the general findings of the trial court in favor of plaintiff were supported by substantial evidence, and that the refusal to make the findings and conclusions requested by defendant was not error.

The judgment is affirmed.