# Central of Georgia Railway Company v. Patterson.

## Loss or Injury to Goods.

(Decided December 17, 1912.   60 South. 465.)

1. *Carriers; Freight; Removal.*—It is the duty of the consignee to remove goods within a reasonable time, and on failure to do so, the consignee becomes liable for charges, and the carrier's responsibility changes to that of warehouseman.

2. *Same; Contracts; Discrimination.*—Storage is an incident of transportation, and the granting of a special storage privilege as a part of the service covered by the rate charged for carriage, and a contract which gives the shipper the right to remove his goods at his convenience after their arrival is a special contract discriminatory in its nature, and violative of the Interstate Commerce Act of Feb. 4, 1887, and the Elkins Act of Feb. 19, 1903, United States.

3. *Same.*—A privilege granted to a shipper by a carrier in order to prevent freight being carried over a competing line is unjustifiable and will not relieve the carrier from being amenable to the Interstate Commerce Act.

APPEAL from Russell Circuit Court.

Heard before Hon. M. SOLLIE.

Action by E. M. Patterson against the Central of Georgia Railway Company for damage for loss or injury to goods by fire.  Judgment for plaintiff and defendant appeals.  Reversed and remanded.

G. L. COMER, for appellant.  The contract set up by replication No. 2, is violative of the Elkins and the Interstate Commerce Acts, and hence, the demurrers to the replications should have been sustained.—*C. of Ga. v. Sims*, 169 Ala. 295; *Castle v. B. & O. R. R. Co.*, 8 I. C. C. R. 333.  Charge 1 ought to have been given, as defendant's common law liability ceased after appellee had a reasonable time within which to remove the goods.—*M. & G. v. Pruitt*, 46 Ala. 64; *Kennedy v.*

*M. & G.,* 74 Ala. 430; *C. & W. R. R. Co. v. Bates,* 89 Ala. 612; *So. Ry. Co. v. Aldridge,* 142 Ala. Ala. 368. On the above authorities counsel insist that the other charges requested should have been given.

GLENN & DE GRAFFENRIED, for appellee. The contract set up was not discriminatory, nor invasive of the Interstate Commerce Act, and hence, the court properly overruled the demurrers.—*I. C. Commission v. B. O. R. R. Co.,* 145 U. S. 263. There was no undue preference shown.—*I. C. Commission v. Ala. Mid.,* 168 U. S. 167; 3 Fed. St. Ann. 816. There was no error in the court's oral charge, as the appellant was bound by the judgment on the replication.—*L. & N. v. Brinkerhoff,* 119 Ala. 606; *Sloss-Sheffield S. & I. Co. v. Vinzant,* 153 Ala. 212.

PELHAM, J.—The appellant was sued in the court below as a common carrier for failure to deliver certain goods, and set up by special plea, as a defense to the action, that it had carried out its contract of carriage by safely transporting the goods to the point of destination and storing them in its freight depot or warehouse at the point of destination, where they remained for a reasonable length of time without having been removed by the plaintiff—consignee—and were, without fault upon the part of the defendant, destroyed by fire.

The plaintiff filed a special replication to this plea, setting up a verbal contract with the defendant under the terms of which it is alleged the defendant carrier agreed, in consideration of the plaintiff (who was engaged in merchandising) shipping all of his freight over defendant's line of railroad, and not patronizing a competing boat line available to him for transportation of his goods, not to require the plaintiff to remove his

goods within a reasonable time after their arrival, but to give him the right to remove the same at his "convenience." The defendant demurred to this replication on the ground that the special contract set up by the replication is violative of the Interstate Commerce Law of the United States regulating common carriers, and is void. The court overruled the demurrers to the replication, and its action in so doing is assigned as error.

The pleadings clearly show the shipment in question to have been an interstate transaction, the goods having been delivered to the defendant carrier at Columbus, Ga., for shipment, as freight, to Ft. Mitchell, Ala., at which latter point it is averred by the defendant that they were destroyed by fire while in defendant's freight warehouse, after the plaintiff had had a reasonable time in which to remove them.

It needs no citation of authorities in support of the often declared well-established rule of law that the consignee is under a duty to remove his goods within a reasonable time after their arrival, and that, upon his failure to do so, the carrier becomes a warehouseman, and can exact charges as such for storage of the goods left in custody. It is this duty resting upon consignees generally to remove goods within a reasonable time or become liable for storage charges that the plaintiff seeks to avoid by setting up a special contract with the carrier exempting him from such duty and liability, and thereby separating him from the operation of the general rule and relieving him from this obligation and the consequent liability for storage charges that as a matter of law obtains and attaches to the general class of shippers as a responsibility growing out of the relation existing between them as such and the carrier.

It is manifest from the rulings of the trial court that that court construed the contract set up by the plaintiff

in his replication as being a contract extending the defendant's common-law liability as carrier and insurer of the goods, and not pertaining to that other liability of a common carrier incident to its function as a carrier, when through lack of diligence upon the part of the consignee in receiving and removing goods within a reasonable time after they are carried to the destination as provided in the contract of shipment, the carrier is forced into the position of a warehouseman. We cannot agree with the primary court in the construction given by it to this contract. It seems to us the proper construction to be given to it is that the plaintiff seeks to set up a special agreement with the carrier under the terms of which, in consideration of receiving the plaintiff's patronage, the defendant agrees to hold all goods shipped over defendant's railroad and consigned to the plaintiff in the defendant's freight depot or warehouse at Ft. Mitchell, Ala., without charge, to be removed at the convenience of the plaintiff. In other words, in effect, it is a special contract whereby the carrier agrees to furnish to one of its shippers, the plaintiff, free storage for his goods for an indefinite period, dependent upon the plaintiff's convenience in removing the goods from the defendant's warehouse. Storage is an incident of transportation, and may be dealt with as such. Granting a special storage privilege as part of the service covered by the rate charged for carriage may be a matter of considerable consequence to the shipper, and to the extent of its value each such privilege lessens the aggregate compensation paid by the shipper to the carrier for transportation and terminal services.

The legality of the practice or service required under the terms of the special contract set up by the plaintiff in his replication hinges, not alone upon its not being in violation of the discrimination provided against under

section 3 of the Interstate Commerce Act, but also upon its not being violative of section 6 of that act or the act amending the original act of 1887, known as the "Elkins Act," of February 19, 1903 (32 Stat. 847, c. 708 [U. S. Comp. St. Supp. 1911, p. 1309]). The third section of the original act of 1887, known as the "Interstate Commerce Act" (24 Stat. 379, c. 104 [U. S. Comp. St. 1901, p. 3155]), provides: "That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality or any particular description of traffic in any respect whatsoever or to subject any particular person, company, firm, corporation or locality or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." By the sixth section of the original act of 1887, it is required that all carriers subject to the act shall print and keep for public inspection schedules showing the rates, charges, and classifications, "and any rules or regulations which in any wise change or affect or determine any part of the aggregate of such aforesaid rates and fares and charges," and also provides as follows: "And when any such common carrier shall have established and published its rates, fares, and charges in compliance with the provisions of this section, it shall be unlawful for such common carrier to charge, demand, collect, or receive from any person or persons a greater or less compensation for the transportation of passengers or property, or for any services in connection therewith, than is specified in such public schedule of rates, fares, and charges as may at the time be in force." The Elkins Act of 1903, amending the act of 1887, provides that it shall be "unlawful for any person, persons, or corporation to

offer, grant or give, or to solicit, accept, or receive, any rebate, concession, or discrimination in respect of the transportation of any property in interstate or foreign commerce by any common carrier subject to said act to regulate commerce and the acts amendatory thereto, whereby any such property shall, by any device whatever, be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereto, or whereby any other advantage is given or discrimination is practiced."

The Interstate Commerce Commission, in the case of *American Warehouse Association v. Ill. Cent. R. R. Co.,* 7 Interst. Co. R. 556, held that storage is within the contemplation of section 1 and 6 of the act, and that "whenever any service is rendered or any privilege is allowed beyond the ordinary receiving, transporting and delivering of the property, that it should appear upon the schedule"; "schedule," as here used, having reference to the tariffs required by the interstate commerce law to be published under a penalty provided for failure. That a railroad may not allow free storage to some and not to others is the holding of the Commission in the case last above cited; it being held to be the exercise of a discretion making a discrimination in the face of the provsions of sections 3 and 6 of the act. The Commission in that case say: "With no general duty to act as warehouseman for indefinite periods in connection with its primary obligations as a common carrier, it cannot assume to provide shippers with valuable warehouse facilities which are not essential to its business as a carrier, without furnishing them for all shippers at all times and upon the same terms and notifying the public thereof in the manner provided by law."—*Am. Warehouseman's Ass'n v. I. C. R. R. Co., supra.* See, also,

*Blackman v. So. Ry. Co.,* 10 Interst. Com. R. 352. It is stated generally by Mr. Judson, in his work on Interstate Commerce (page 230, § 187), that any form of discrimination between persons in the performance of any of the duties of a carrier would be violative of section 3 of the act. Certainly a discrimination between individuals that gives one shipper a preference over another, or shippers in general, is not justified under the Interstate Commerce Act, for it is granting an undue preference to that one so favored or preferred in violation of the provisions of the act; the favoritism of itself by the carrier, acting in that capacity with the shipper as such, being what is intended to be prohibited. Thus, it has been held that preference in furnishing reasonable car service is an unjust discrimination.—*U. S. v. West. Va. N. R. R. Co.* (C. C.) 125 Fed. 252, s. c. affirmed, 134 Fed. 198, 67 C. C. A. 220; *U. S. v. N. & W. Ry. Co.* (C. C.) 109 Fed. 831.

It has been held that to allow free cartage to one and not to others is an unjust discrimination.—*I. C. C. v. Detroit, etc., Co.,* 167 U. S. 633, 17 Sup. Ct. 986, 42 L. Ed. 306. And the same is true of free elevation for grain, or of the privilege of milling in transit.—*In re Allowances to Elevators,* 12 Interst. Com. R. 85; *St. Louis H. & G. Co. v. Mobile & O. R. R. Co.,* 11 Interst. Com. R. 101. Many other holdings of the Interstate Commerce Commission and the courts are to the same effect, notably the recent decision by the Supreme Court of the United States in the case of *Chicago & Alton R. R. Co. v. Kirby,* 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033. In this case the court holds that it is an undue and unreasonable preference forbidden by the act, for the carrier to make a special agreement with a shipper undertaking to expedite a car load shipment of horses over its own lines to the point of connection

with the next carrier, so that it will reach the point of connection with the next carrier in time to be carried by a special fast stock train.

The contract asserted and sought to be enforced by the plaintiff under the averments of his special replication, construed in the light of the decisions of the Interstate Commerce Commission and the federal courts, is clearly violative of the interstate commerce laws, and for that reason invalid. It provided for a liability of the carrier different from that which would exist with respect to a shipper who. made no such special contract, and was in its nature an agreement according a special privilege to a particular shipper not offered to the public generally that, in effect, lessened the aggregate charge by the carrier for the service rendered to that individual shipper. The shipper on the face of the agreement relied upon was contracting with the carrier for an advantage which was not extended to other shippers. "An advantage accorded by special agreement which affects the value of the service to the shipper and its cost to the carrier should be published in the tariffs, and for a breach of such a contract relief will be denied, because its allowance without such publication is a violation of the act. It is also illegal because it is an undue advantage, in that it is not one open to all others in the same situation."—*Chicago & A. R. R. Co. v. Kirby, supra.*

So far as the appellee's contention with respect to the consideration to the carrier for making the contract being valid and sufficient to make the contract binding is concerned, it was held in the case of *Wight v. U. S.,* 167 U. S. 512, 17 Sup. Ct. 822, 42 L. Ed. 258, that a necessary concession made or privilege granted by a carrier to prevent freight being carried over a competing line is unjustified and will not relieve the carrier from

being amenable to the provisions of the Interstate Commerce Act. That part of the oral charge of the court to which an exception was reserved is erroneous, and the rulings on the written charges cannot be reconciled as correct, or as being in line with our holdings as above expressed.

Reversed and remanded.