# Louisville & Nashville R. R. Co. v. Dawson.

## Wrongful Ejection of Passenger.

(Decided December 15, 1914.   66 South. 905.)

1. *Carriers; Ejection of Passenger; Pleading.*—Where the evidence showed that the passenger rode on a pass, defendant was entitled to the affirmative charge as to counts predicating a right to recovery on the fact that plaintiff had paid his fare.

2. *Same; Passes; Presumption.*—Where the count did not allege that the passenger was a person to whom a pass could be issued, but did allege that he was riding on a pass, the presumption is that it was a free pass, but it will not be presumed that he was a person not entitled to such a pass as that would be an offense under Acts 1911, p. 193.

3. *Same; Exceptions.*—As a defense to an action for the wrongful ejection of a passenger riding on a pass, a plea relying on the fact that plaintiff was not a passenger to whom a free pass could be issued within the statute which did not specifically allege that plaintiff was not an employee, officer, etc., as designated in the excepting clause of the statute, was insufficient.

4. *Same; Passes; Persons Not Entitled.*—A conductor accepting a pass from a person not entitled to ride thereon is bound to withdraw such acceptance as soon as he acquires knowledge of the fact, (sec-

tion 7691, Code 1907) and there can be no question of estoppel by the original acceptance of the pass; but such person should not be ejected until he has been given a chance to pay the fare.

5. *Same.*—A defense that the pass was a free one which the conductor withdrew, can be availed of only by special plea confessing the pass, and setting up the withdrawal to avoid it.

6. *Same; Persons Entitled.*—An employee of an independent contractor for the construction of a depot is an employee of a railroad company, and a person to whom the pass might be issued under the statute.

7. *Same; Care Required.*—A person riding on a free pass is entitled to the same care and protection which a carrier is under obligation to furnish to passengers paying fare.

8. *Same.*—If it be conceded that a conductor has the power to withdraw in transit a free pass lawfully issued, the passenger should not be ejected before an opportunity has been given him to pay his fare.

9. *Same; Replication; Sufficiency.*—Where plaintiff was a passenger riding on a pass issued to five named persons, of whom plaintiff was one, a special plea to a complaint for wrongful ejection of plaintiff setting up a rule of the company that if the person named in the pass was ejected, the others must also leave or pay fare was not answered by a replication merely alleging that plaintiff was not ejected for irregularity in the pass but for disorder, and hence, the replication was demurrable.

10. *Same; Instruction.*—Where plaintiff was riding on a pass issued to a named person and four others, of whom plaintiff was one, and the named person was ejected, and under the rules of the company, the others could be ejected, an instruction that defendant was not liable if he offered the others a chance to ride upon payment of fare, was properly refused as ignoring the question whether such named person was rightfully ejected.

11. *Same; Damages.*—Where the action was for wrongful ejection of a passenger, the price paid by plaintiff for a meal for another is not an element of damage, nor is the price of a meal for himself an element except to the extent that the cost of such meal exceeded what plaintiff would have had to pay had he been permitted to ride.

12. *Pleading; Demurrer; Motion to Strike.*—The proper remedy to reach a claim for punitive damages in the complaint which does not aver willful or wanton injury is by motion to strike out the allegation as to punitive damages, and not by demurrer.

13. *Same; Demurrer; Sufficiency.*—The demurrer to a pleading should be overruled where its grounds do not point out the defect in the pleading.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES W. FERGUSON.

Action by J. W. Dawson against the Louisville & Nashville Railroad Company, for damages for injuries

for being wrongfully ejected from one of its passenger trains. Judgment for plaintiff and defendant appeals. Reversed and remanded.

TILLMAN, BRADLEY & MORROW, and JOHN S. STONE, for appellant. The court erred in overruling demurrers to the first count of the complaint as amended.— *Fidelity Co. v. Walker*, 158 Ala. 142; *Daniels v. Carney*, 148 Ala. 81; *A. G. S. v. Cardwell*, 171 Ala. 274. The demurrers to the second count should have been sustained.—*Lawrence v. Seay*, 60 South. 937. Demurrers to count three should have been sustained.—30 Cyc. 797; *B. R. L. & P. v. Abbott*, 60 South. 972; *Lawrence v. Kaul L. Co.*, 55 South. 111. The ninth plea was a good answer to the third count of the complaint, and the court erred in sustaining demurrers thereto.—*Newton v. Brock*, 134 Ala. 269; *State v. B'ham Co.*, 164 Ala. 586, and authorities supra. On these authorities, it is urged that the demurrers to the other pleas should have been overruled. The court erred in overruling the demurrer of appellant to replication 2 to pleas 4, 8, A, C and D.—*Broyles v. C. of Ga.*, 166 Ala. 620; *McGhee v. Reynolds*, 117 Ala. 418. Defendant was entitled to the affirmative charge as to the second and third counts, as there was a material variance between the allegation of the counts and the proof adduced in support thereof.

PALMER P. DAUGETTE, for appellee. The court properly overruled the demurrers to the complaint.—*Armstrong v. Mont. St. Ry.*, 123 Ala. 233; *B'ham R. L. & P. Co. v. Anderson*, 57 South. 103; *Same v. Adams*, 146 Ala. 267; *L. & N. v. Hall*, 91 Ala. 117; *M. & M. Ry. v. Crenshaw*, 65 Ala. 566; 6 Cyc. 544. Counsel discusses other assignments of error, and insists that in the light of these authorities the judgment of the lower court should be affirmed.

THOMAS, J.—The court erred in refusing the affirmative charge requested by appellant, defendant below, as to counts 1 and 2 of the complaint; since there was an entire absence of proof as to a material averment contained in each of these counts, to the effect that plaintiff had "paid his fare" for transportation on the train from which it was alleged that he was ejected by defendant's servants or agents. The evidence showed without dispute that his right to be and remain on the train, if any, at the time of his alleged ejection, was a "pass" that had been issued by the defendant.

This condition of the record as to the evidence renders it unnecessary to consider the question as to whether or not the court did not also err in overruling the defendant's demurrer to each of said counts, and this for the reason that it conclusively appears as seen, that neither of these counts, as to the averment mentioned, can ever be proved. Hence, in disposing of the demurrers to the complaint, we will confine our attention to the only other count thereof (count 3), which predicated plaintiff's right to be on the train, at the time of his alleged ejection, upon "a pass," and which count, as amended (if we have properly interpolated in the count at the place where intended, which is not clear, the amending words), reads as follows:

"Plaintiff claims of defendant $1,000 as damages for that heretofore, to wit, the 15th day of March, 1912, plaintiff boarded defendant's regular passenger train at Flomaton, Ala., his destination being Birmingham, Ala., and that after the conductor had received and accepted plaintiff's pass which entitled him to passage to Birmingham, Ala., he unlawfully ejected plaintiff from said train at Chapman, Ala.; wherefore plaintiff suffered the injuries and damage complained of in the first

[Louisville & Nashville R. R. Co. v. Dawson.]

count of the complaint and claims in addition thereto punitive damages."

The averments of the count, as seen, fail to show that the injury complained of was wantonly or willfully inflicted, and hence furnished no basis for the claim therein of punitive damages, but only a basis for compensatory damages. The defendant, instead of moving, as it should have done, to strike the allegation claiming punitive damages demurred on the ground that the averments of the count did not show willful or wanton injury. The court did not err in overruling this ground of the demurrer, as the count, if proved, would authorize the recovery of the compensatory damages claimed therein. A motion to strike would have been the proper remedy for this defect of the count, claiming damages not authorized by its averments.

Another insistence of defendant (appellant here) with respect to the numerous grounds of the demurrer filed to this count is that the count is defective, as pointed out in some of those grounds, in that it nowhere appears from the averments of the count that the plaintiff was a person to whom the defendant was authorized by law to issue free transportation. While it is true, as contended in support of this position, that the rule to the effect that pleadings are to be construed most strongly against the pleader requires us to presume, for purposes here, that the "pass" alleged and relied on in said count as plaintiff's right to be on the train was a "free pass" (there being no averment to the contrary in said count), yet we are not of opinion that such rule requires us, as is also contended, to presume that said "free pass" was illegally issued by the defendant and to a person not authorized by law to receive or accept it; for this would be to construe the rule so as to make it require us to presume that both the defendant and the

plaintiff had violated the mandates of a criminal statute and were each guilty of a crime (the former in issuing, and the latter in accepting, the free pass), because the statute (Code, § 7692, as amended by Gen. Acts 1911, p. 193) makes it a misdemeanor for any common carrier of passengers, and for any of its agents, officers, servants, or employees, to issue to or accept from a passenger as transportation for the journey any free pass, or reduction in rate, etc., unless the passenger to whom such pass has been issued or reduction given is an employee of the carrier, or other person named in the excepting clause of the statute, and likewise makes it a misdemeanor for any person, other than those named in such excepting clause, to accept from such carrier or to use as transportation any free pass, free ticket, free transportation, rebate, discount, or reduction from such rates as are offered and given by the carrier to the public at large or in general.

The common-law rule allowed the issuance by the carrier of free passes to any person it might so choose to favor and permitted any person to accept of such favor. The statute mentioned ingrafted exceptions upon this rule, leaving it still lawful to issue free passes to persons coming within the class or classes named in the statute, but forbidding their issuance to or acceptance by all other persons not so named. The statute is not therefore a grant of the right to issue and accept free passes, but is merely a limitation upon such right that has always existed; and it is not to be presumed that the defendant and plaintiff—the one in issuing and the other in accepting the free pass—exceeded those limitations. If in fact they did in this case, then it is a matter of illegality that would avoid the efficacy of the pass, which, prima facie, is valid; but such matter would have to be specially pleaded in defense, just as

is required to be done when the illegality of a contract declared on is not disclosed in the complaint. In this connection, it may be stated, in disposing of other questions presented, that defendant did file two such .pleas (pleas numbered 10 and 11) to which demurrers were sustained.

While each of these pleas is defective for a failure to . allege specifically that plaintiff was not an employee, officer, agent, surgeon, or attorney of defendant, nor a member of the family of either such, nor a minister of religion, nor other person (designating him in the language of the excepting clause of the statute, *Bell v. State,* 104 Ala. 82, 15 South. 557) to whom defendant might lawfully issue free transportation or grant a reduction in fare; and while each plea is further defective in failing to allege that the conductor rejected the illegal pass and ejected plaintiff because of his failure or refusal, after opportunity given, to pay fare (*Buffalo, etc., R. Co. v. O'Hara,* 9 Am. & Eng. R. R. Cas. 317)— yet we are not of opinion, as insisted by appellee (plaintiff below), that the fact, alleged in the complaint, to the effect that the conductor had accepted the pass when tendered, estopped him from subsequently withdrawing such acceptance. The doctrine of estoppel has no application to such a case, since such doctrine is not to be enforced to the extent of requiring a party to violate the terms of a criminal statute.—*C. of Ga. Ry. Co. v. Bir. B. & S. Co.,* 9 Ala. App. 419, 64 South. 202. Under section 7691 of the Code, it seems to us that it would be the duty of a conductor who had accepted as transportation for a passenger a pass that had been issued in violation of the statute to withdraw such acceptance so soon as he had knowledge that the passenger was not one allowed by the statute to ride on such a pass (authority supra). Upon such withdrawal, however, the

conductor, before ejecting the passenger, should give him an opportunity to pay fare, and only in case he refused or failed to pay fare, after such opportunity, should he eject him.—*Buffalo, etc., R. Co. v. O'Hara,* 9 Am. & Eng. R. R. Cas. 317.

While, as said, we are of opinion that each of defendant's said pleas (numbered 10 and 11) was demurrable, yet neither ground of the demurrer filed to them pointed out their mentioned defects, and the court therefore erred in sustaining said demurrers to the pleas.

Another contention of appellant, raised by the demurrer to said count 3 of the complaint, is that, even assuming that the pass alleged therein was lawfully issued and valid as a free pass, yet, since such a pass (a free pass, that is, one granted without consideration) is nothing more (it is urged) than a mere license which may be withdrawn at the pleasure of the giver (*Turner v. Richmond R. Co.,* 70 N. C. 1), we must presume that plaintiff's alleged ejection was due to a withdrawal by defendant of the pass, and consequently that such ejection was lawful. We are equally clear that this contention is without merit, and that, if there had been a withdrawal of the free pass or license if lawfully issued, the fact of such withdrawal could be properly availed of as a defense only by a special plea confessing the pass so pleaded in the complaint and setting up the withdrawal in avoidance of it.

So long as such a pass continues in force, a person riding on it is, ordinarily, entitled to all the care and protection which the carrier is under obligation to furnish paying passengers.—5 Am. & Eng. Ency. Law, 508; 6 Cyc. 544. He is not a trespasser, and even when the pass is withdrawn (assuming, which is not ordinarily the case, that a conductor is clothed with authority to

withdraw a pass or license that has been lawfully issued by the constituted authorities of a railroad company), the holder should be given an opportunity to pay fare before he is ejected.—*Buffalo, etc., R. Co. v. O'Hara,* 9 Am. & Eng. R. R. Cas. 317.

The defendant by several pleas, to which a demurrer was overruled, set up, in varying phraseology, substantially that the pass mentioned in the complaint was a joint pass that had been issued to five persons (to wit, C. E. Bass and four other men, not named in the pass) for the trip from Flomaton to Birmingham; that these four men, who were not named in the pass, and who included plaintiff, all, in company with said C. E. Bass, the person named in and the holder of the pass, boarded defendant's passenger train at Flomaton for Birmingham; that the conductor accepted the pass as transportation for them all, punched it, and then returned it to said C. E. Bass, so that he would have it for presentation to the next conductor (the one on the train from Montgomery to Birmingham), since the train the parties were then on went no further than Montgomery; that after this acceptance of the pass, and before the train reached Montgomery, the said C. E. Bass and others of the party (not the plaintiff, however), having indulged too freely in the use of intoxicants, became so disorderly as to justify (Code, § 5492) and necessitate their ejection at Chapman, which was done; and that there was a rule of the defendant company, of which plaintiff had knowledge, providing in effect that, when the person whose name appeared in the face of the pass was ejected from or left the train before arriving at the place to which he was entitled to go, the other person or persons for whom said pass was intended, but who were not named therein, as here, would also, unless they paid fare, have to leave the train with the person named

in the pass; and that plaintiff, upon the ejection of Bass, neither tendered nor paid fare, and was consequently ejected, but that in doing so the conductor used no more force than was reasonably necessary to that end. To these pleas of defendant, plaintiff filed only three replications: One setting up (quoting it in full) "that defendant's conductor ejected plaintiff from said train for alleged disorder and for no other cause"; another, after setting up facts tending to show that plaintiff was an employee of defendant and that the mentioned pass was lawfully issued, then averred that (quoting from the plea) "defendant's conductor did not eject plaintiff from said train on account of any irregularity in said pass, but for certain alleged disorder and misconduct"; another, after setting up facts tending to show that defendant was an employee of a contractor that was under contract with defendant to rebuild or repair its depot at Flomaton and that the pass was issued to plaintiff as an employee of such contractor, assisting as a carpenter in such work, and that such pass was accepted by the conductor, then averred that (quoting from the plea) "said conductor ejected plaintiff from said train for alleged misconduct." The court overruled the defendant's demurrer to each of these replications—improperly so, we think, since the replications were no answer to the pleas they purported to answer, failing, as they did, either to traverse and deny or to confess and avoid such pleas, or to set up any matter in estoppel of the defendant from asserting the matters of defense relied on in the pleas. See citations under section 5338 of the Code.

If the replications were intended as a general traverse of the pleas, a proper and succinct form therefor is set out in said section 5338 of the Code cited. We are unable to divine, however, just what was the purpose of

the pleader in the replications mentioned, or to understand just what issue they were intended to present. They seem to depart from the pleas they undertake to answer and to set up that plaintiff was ejected for another reason than the one named in such pleas, to wit, alleged disorderly conduct of plaintiff, rather than of Bass. If either plaintiff or Bass was disorderly, the defendant had, as seen, a right to eject plaintiff. The invalidity of the pass, if invalid, as well as its withdrawal, if it was withdrawn, are matters, as before pointed out, which were incumbent upon the defendant to plead; and the plaintiff by joining issue on such pleas can introduce in evidence any fact tending legally to rebut any evidence offered by defendant in support of such pleas, and to prove the validity of the pass and that it was not withdrawn.

We may add, for the further guidance of the pleaders and of the court on another trial, that if in fact, as one of these replications in substance alleged, the plaintiff was, at the time of the issuance of the pass, in the employment of a person with whom defendant had contracted to rebuild or repair its depot at Flomaton, and defendant had, as a part of the consideration of the contract, agreed with such person to furnish free transportation for his laborers in going to such work from their homes and in returning therefrom, and plaintiff was one of such laborers and held and was riding on the pass for such purpose, then it is our opinion that he was an employee of the defendant within the contemplation of the statute and one to whom defendant might lawfully issue such transportation, although plaintiff's immediate employer—such contractor—may have been, as suggested in one ground of the demurrer to said replication, an independent contractor. If on another trial the evidence develops to the reasonable satisfaction of

the jury either these facts or that plaintiff was in the direct employment of defendant, then defendant would fail in any plea alleging that the pass was unlawfully issued.

We have with unwonted particularity discussed the pleadings in the hope of relieving on another trial the confusion and uncertainty in issues which evidently characterized the last.

Some of the evidence for the defendant tended to show that the conductor, after ejecting at Chapman said C. E. Bass and the others of the party that the evidence for defendant tended to show were disorderly, offered to let plaintiff, who had not so been disorderly but who, under the requirements of the mentioned rule, would, unless he paid fare, have to leave the train when Bass, the holder of the pass was ejected at Chapman, get back on the train and continue the journey as far as Montgomery; but that plaintiff declined this offer and stated that he would remain at Chapman with Bass and the others of his companions. Upon this theory of the evidence, the defendant requested the following charge, which was refused by the court, to wit:

"If you believe from the evidence that the conductor in charge of the train mentioned in the complaint offered to permit plaintiff to continue his journey on said train to Montgomery, Ala., and did not eject him from said train at Chapman, Ala., you must find for defendant."

The court committed no error in refusing this charge for the reason that it ignored entirely the question as to whether or not Bass, the holder of the pass and the only person specifically named in it, was rightfully ejected. If he was not, then plaintiff by such unlawful ejection was wrongfully deprived of the evidence of the pass which was in Bass's possession, who alone was

[Louisville & Nashville R. R. Co. v. Dawson.]

entitled to hold it, as he was the only person named in
it, and without him, therefore, the plaintiff would have
been in no better fix in Montgomery than in Chapman,
so far as went his ability to reach Birmingham without
the pass. Consequently, in such case, he had a right
under the mentioned rule of the defendant company (if
he knew or was informed of its existence by the con-
ductor), to accept his ejection as taking place at Chap-
man rather than deferring it by invitation of the con-
ductor to Montgomery. Consequently the offer of the
conductor to carry the plaintiff on to Montgomery
would not defeat plaintiff's right to recover for the ejec-
tion, but could at most in any case affect only the mat-
ter of damages. On the other hand, if said Bass was
rightfully ejected at Chapman, then under the men-
tioned rule of said company the plaintiff was likewise
rightfully ejected also, and cannot complain, unless he
paid or tendered fare.

Assuming the validity of the pass (a question which
may be tested out on another trial, but as to which the
defendant was foreclosed by the rulings before pointed
out of the trial court), it seems to us the whole defense
rests upon whether Bass, the holder of the pass, was
lawfully ejected or not. If he was, then plaintiff was
also lawfully ejected at that place by operation of the
mentioned rule, if he knew or was informed of it—un-
less he paid or tendered fare. If Bass was unlawfully
ejected (that is, without cause), then likewise by oper-
ation of the rule plaintiff was unlawfully ejected and
was not required to pay or tender fare in order to make
such ejection unlawful—although the pass was a free
pass—unless it be shown that the conductor, as the
agent of defendant company, had authority to with-
draw without cause any free pass or license that may
have been issued by the constituted authorities of the

defendant, and that he gave notice of such withdrawal and afforded the plaintiff opportunity to pay fare before ejecting him.

The court erred in permitting the plaintiff to prove as an element of damages the price plaintiff paid for a meal at Chapman for himself and another. Certainly, the defendant was not liable for meals furnished by plaintiff to another, and was not even liable for plaintiff's own meals at Chapman, except to the extent that the cost of them at that place exceeded what plaintiff would have had to pay for them if he had been permitted to continue his journey. We take judicial notice of a fact of common knowledge that food ordinarily costs something everywhere and that persons ordinarily eat when hungry, and, unless it be shown by plaintiff that by reason of his ejection his meals cost him more or caused him to eat more and thereby occasioned a greater expense in this particular than would otherwise have happened, then the price of meals was not damages proximately resulting from the wrongful act complained of, but an expense which would have been sustained even if he had been permitted to continue the journey.

There is no evidence in this case of wanton or willful injury, or that the conductor in any wise assaulted or abused or mistreated the plaintiff, or that any physical force was used in ejecting him; but plaintiff's own evidence shows that he left the train upon request of the conductor when Bass was ejected. Hence there is nothing in the case to authorize the infliction of punitive damages.

It becomes unnecessary to consider the other questions, since what we have said will serve as a sufficient guide to the court and the pleaders on another trial.

[Southern Railway Co. v. Jarvis.]

For the errors pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.