·(101 South. 597)

## LOUISVILLE & N. R. CO. v. A. H. CLEAVER & CO. (6 Div. 226.)

(Supreme Court of Alabama.  Oct. 16, 1924.)

**·1. Carriers ⬨⟹32(1) — Interstate rates may not be changed, so as to result in discrimination.**

With respect to interstate shipments, rates ·established according to law may not, by importunity, mistake, or otherwise, be changed for advantage of individual shippers, nor may any special advantage or discrimination be se-·cured by contract or otherwise.

**:2. Carriers ⬨⟹32(2)—Stipulation in bill of lading for compressing cotton held void as attempted discrimination in favor of particular shipper.**

Stipulation indorsed on bill of lading cov-·ering cotton shipment, in words "to be compressed in transit," *held* void as to intrastate shipment, in view of Code 1907, § 5531, and void as to interstate shipment, in view of U. S. Comp. St. § 8597, as attempted discrimination in favor of particular shipper.

Appeal from Circuit Court, Jefferson County; Roger Snyder, Judge.

Action for breach of contract by A. H. ·Cleaver & Co. against the Louisville & Nashville Railroad Company. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals, under Acts 1911, p. 449, § 6. Reversed and remanded.

Tillman, Bradley & Baldwin and William Douglas Arant, all of Birmingham, for appellant.

The effect of the alleged contract would have been to vary the rate schedules governing the shipments in question, and any such contract would have been discriminatory and void.  C. & A. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; L. & N. v. Jones, 6 Ala. App. 617, 60 So. 945; C. of G. v. Patterson, 6 Ala. App. 494, 60 So. 465; Sou. Ry. v. Harrison, 119 Ala. 539, 24 So 552, 43 L. R. A. 385, 72 Am. St. Rep. 936; Nor. Ala. v. Wilson Mer. Co., ·9 Ala. App. 269, 63 So. 34; C. of G. v. B'ham. Sand & Brick Co., 9 Ala. App 419, 64 So. 202; Lewis v. Sou. Ry., 217 F 321, 133 C. C. A. 237.  1 Roberts, Fed. Liab. Carr., § 263; Code 1907, § 5531; Armour Pkg. Co. v. U. S., 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed 681; Poor Grain Co. v. C. B. & Q., 12 Interst. ·Com. Com'n R. 418; Peters Mill Co. v. C. B. & Q., 38 Interst. Com. Com'n R. 245.

London, Yancey & Brower and Clara Cain, all of Birmingham, for appellee.

Counsel argue that the contract was valid and permissible under the tariff schedules, and that cases cited by appellant are inapt or to be discriminated

SAYRE, J.  Appellee in its complaint alleged that bales of cotton were shipped to it over defendant's rails, and that defend-·ant.breached its contract (bill of lading) for the transportation of said cotton, to plaintiff's damage, for that it failed or refused to compress·the same in transit, wherefore plaintiff was compelled at its expense to have said cotton compressed at the point of destination.

[1, 2]  In the evidence it appeared that the cotton had been shipped from points in Tennessee and Alabama to plaintiff at Mobile, "a cotton port."  Upon its arrival at Mobile, plaintiff compressed the cotton at the reasonable cost of the amount claimed in the complaint.  Appellant notes the fact that the several bills of lading—there were several bills of like tenor and effect—were prepared by the shippers; but this is considered to be of no importance, for the bills, as so prepared, were issued by defendant; nor has there been any effort to show that they were imposed on defendant by fraud or false representation.  The bill—to speak of one of them only—purports to be in standard form, except as hereafter noted, and subject to classifications and tariffs in effect on the date of issue, meaning, as the bill of exceptions shows, the Interstate Commerce Commission's "Port Cotton Tariff," reading in material part as follows:

"Cotton and cotton linters or regins, in bales, compressed or uncompressed, with privilege to carrier of compressing at origin or in transit when delivered to the carrier uncompressed."

And then follows a statement of rates from the several points of shipment to destination, and rules reading in material parts as follows:

"When cotton and cotton linters or regins are to be forwarded at rate shown in this tariff, applying on 'Cotton and cotton linters or regins, compressed or uncompressed, with privilege to carrier of compressing at origin or in transit when delivered to the carrier uncompressed,' carriers reserve the right to compress such cotton and cotton linters or regins at any compress they may designate, or to carry it through to destination or to junction point with connecting carriers uncompressed, if they so desire."

And:

"Uncompressed cotton and cotton linters or regins may be stopped, by direction of shipper, at a compress directly intermediate .between points of origin and destination for compression, and actual cost of such compressing will be at shipper's expense. * * *

"Note.—This arrangement does not affect shipments handled under rates on cotton and cotton linters or regins, in bales, compressed, or uncompressed, with privilege to carrier of compressing at· origin or in transit when delivered to the carrier uncompressed."

---

⬨⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

And:

"When cotton and cotton linters or regins are shipped to the ports named in this tariff uncompressed, and are compressed at such ports, the cost of compression will be in addition to the rates published herein to the ports proper."

And:

"Each carrier over whose route cotton is to be transported hereunder shall have the privilege, at its own cost and risk, of compressing the same, for greater convenience in handling or forwarding. * * *"

Parties are agreed that the words "To be compressed in transit" were written by the shipper upon the bill of lading, herein causing it to differ from the standard bill of lading, pertinent and material parts of which have been stated.

It is clear enough that plaintiff's right to the damages claimed rests upon that clause of the bill of lading inserted by the shipper, viz.: "To be compressed in transit." Assuming the concurrence of the shipper and defendant in all the terms of the bill of lading as written, our opinion is that the stipulation for compression of the cotton in transit evidenced an attempt to discriminate in favor of the shipper or its consignee, and was therefore a nullity. It is to be observed that under the standard bill of lading the carrier had the privilege of compressing at origin or in transit—reserved the right to compress the cotton or to carry it through to destination uncompressed, if it so desired. This was for the advantage immediately of the carrier, to enable it to conserve car space, where such conservation was dictated by the demands upon its facilities. The clause injected into the contract by the shipper was for the advantage of the shipper, provided without alternative for compression by the carrier before delivery at destination, where otherwise it would be necessary to provide for compression at the shipper's expense. This was an attempted discrimination in favor of the shipper in the particular case over shippers generally.

The statute of the United States (32 Stat. p. 847 [U. S. Comp. St. § 8597]) provides that "it shall be unlawful for any person, persons, or corporation to offer, grant, or give or to solicit, accept, or receive any rebate, concession, or discrimination in respect of the transportation of any property in interstate or foreign commerce by any common carrier subject to said act to regulate commerce and the acts amendatory thereof whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereof, or whereby any other advantage is given or discrimination is practiced," and prescribes criminal penalties.

The same act also provides that any departure from any rate filed with the Interstate Commerce Commission, or any offer to depart therefrom, shall be deemed an offense under the act. We have a similar provision in the law of this state affecting, of course, only intrastate transportation. Code of 1907, § 5531.

In Chicago & Alton Ry. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501, the Supreme Court of the United States, concerning the effort on the part of a shipper and a carrier by special contract to vary a published rate, said:

"An advantage accorded by special agreement which affects the value of the service to the shipper and its costs to the carrier should be published in the tariffs, and for a breach of such a contract relief will be denied, because its allowance without such publication is a violation of the act. It is also illegal because it is an undue advantage in that it is not one open to all others in the same situation."

And the court quoted Armour Packing Co. v. United States, 209 U S. 56, 28 S. Ct. 428, 52 L. Ed. 681, as follows:

"The Elkins Act [32 Stat., supra] proceeded upon broad lines and was evidently intended to effectuate the purpose of Congress to require that all shippers should be treated alike, and that the only rate charged to any shipper for the same service under the same conditions should be the one established, published, and posted as required by law."

The result of the authoritative decisions as to interstate shipments is that the rates established according to law may not, by importunity, mistake, or otherwise, be changed for the advantage of individual shippers, nor may any special advantage or discrimination be secured by contract or otherwise. Cases supra; Lewis, Leonhardt & Co. v. Southern Ry. Co., 217 F. 321, and cases cited on page 328, 133 C. C. A. 237; Peters Mill Co. v. C. B. & Q. R. Co., 38 Interst. Com. Com'n R. p, 248. To the same effect are cases which have been decided by the Court of Appeals. L. & N. R. Co. v. Jones, 6 Ala. App. 617, 626, 60 So. 945; Central of Georgia v. Patterson, 6 Ala. App. 494, 60 So. 465; Central of Georgia v. Birmingham Sand & Brick Co., 9 Ala. App. 419, 64 So. 202. Under the statute law of this state, the same rule must be applied to intrastate shipments.

The effect of statutory regulations has been thus stated in 1 Roberts, Federal Liabilities of Carriers, § 257:

"A carrier cannot depart to any extent from the published schedules on file [with the Interstate Commerce Commission] without incurring the drastic penalties prescribed by the statute; for, under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge, and deviation from it is not permitted upon any pretext"—citing the cases.

And section 258 of the same volume lays down the proposition that the same principle "governs also all transit and other special services provided in the tariffs of carriers."

It results that by inserting the stipulation noted above plaintiff sought an unlawful advantage to which the courts cannot give effect.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.